988 A.2d 1075

# MARYLAND DEPARTMENT OF STATE POLICE

v.

# MARYLAND STATE CONFERENCE OF NAACP BRANCHES.

## No. 1476 Sept.Term, 2008.

Court of Special Appeals of Maryland.

Feb. 2, 2010.

David R. Moore (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellant.

Brian L. Schwalb and Seth Rosenthal (Venable, LLP, on the brief), Washington, DC, for Appellee.

Panel: KRAUSER, C.J.,* DAVIS,** SALMON, JAMES R. EYLER, DEBORAH S. EYLER, MEREDITH, WOODWARD, ZARNOCH, MATRICCIANI and KEHOE, JJ.

SALMON, Judge.

The parties to this appeal are the Maryland Department of State Police ("MSP"), appellant-cross appellee, and the Maryland State Conference of NAACP Branches ("NAACP"). The main issue to be resolved is whether about ten-thousand

---

* Chief Judge Peter Krauser presided at the en banc hearing of this case, but he was not able to participate in the Conference.

** Acting Chief Judge Arrie Davis presided at the Conference.

documents that constitute the Maryland State Police's internal affairs files relating to allegations of illegal racial profiling are "personnel records of an individual" within the meaning of that term as used in the Maryland Public Information Act ("the Act"). We shall hold that the Circuit Court for Baltimore County erred when it concluded that the records withheld by the MSP were "personnel records" within the meaning of the Act. Therefore, the records must be produced for inspection and copying by the NAACP.

## I.

The NAACP and the MSP entered into a federal consent decree in 2003 that obligated the MSP to combat racial profiling by its officers. The order was part of ongoing litigation between the parties. *See Md. State Conf. of NAACP Branches v. Md. Dep't of State Police,* 72 F.Supp.2d 560 (D.Md.1999); *appeal at Bridges v. Dep't of Md. State Police,* 441 F.3d 197 (4th Cir.2006); *on remand, Md. State Conf. of NAACP Branches v. Md. State Police,* 454 F.Supp.2d 339 (D.Md.2006).

In 2007, the NAACP became suspicious that the MSP was not fulfilling the obligations undertaken when it signed the consent decree. Accordingly, on February 27, 2007, the NAACP filed a request for information pursuant to Maryland Code (1984, 2004 Repl.Vol.), § § 10–611–10–630 of the State Government Article (i.e., the Act). The NAACP asked for twelve categories of State Police records.

Request No. 6 asked the MSP to produce:

All documents obtained or created in connection with any complaint of racial profiling, including but not limited to any complaint filed with or investigated by the MSP's Department or Internal Affairs, including all complaints filed, all documents collected or created during the investigation of each complaint, and all documents reflecting the conclusion of each investigation.

On March 28, 2007, the MSP granted the NAACP's request as to seven categories of records and denied it as to five

categories. Included in the requests denied was request No. 6.

Request No. 6 was denied on the sole ground that the documents requested were personnel records of an individual. In support of that denial, the MSP cited section 10–616(a) and (i) of the Act. Section 10–616 reads, in relevant part, as follows:

(a) *In general.*—Unless otherwise provided by law, a custodian shall deny inspection of a public record, as provided in this section.

\* \* \*

(i) *Personnel records.*

(1) Subject to paragraph (2) of this subsection, a custodian shall deny inspection of a *personnel record of an individual,* including an application, performance rating, or scholastic achievement information.

(2) A custodian shall permit inspection by:

(i) the person in interest; or

(ii) an elected or appointed official who supervises the work of the individual.

(Emphasis added.)

It is undisputed that the NAACP is neither a "person in interest"[1] nor "an elected or appointed official who supervises the work of the individual" as those terms are used in the Act.

The NAACP, by its counsel, sent a letter to the MSP on May 2, 2007, which concerned, among other things, request No. 6. In that letter, counsel said that the NAACP would

---

1. As defined in section 10–611(e) of the Act, a "person in interest" is

(e) *Persons in interest.*—"Person in interest" means:

(1) a person or governmental unit that is the subject of a public record or a designee of the person or governmental unit;

(2) if the person has a legal disability, the parent or legal representative of the person; or

(3) as to requests for correction of certificates of death under § 5–310(d)(2) of the Health–General Article, the spouse, adult child, parent, adult sibling, grandparent, or guardian of the person of the deceased at the time of the deceased's death.

have no objection if the custodian redacted from the records the names of the officers and established instead "a unique number or code for each trooper ... [in order for the NAACP] to ascertain whether a particular trooper is referenced in more than one complaint and/or record without divulging that particular trooper's identity."

The parties could not reach an agreement as to what should be produced. Accordingly, on September 26, 2007, the NAACP, filed suit in the Circuit Court for Baltimore County, in which it asked the court to compel the MSP to provide it with, among other things, documents covered by request No. 6, i.e., internal affairs records concerning racial profiling complaints lodged against various troopers.

Between March and June 2008, the parties conducted discovery and, at the request of the circuit court, the records at issue were delivered to the court for inspection *in camera*. The MSP represented to the court that the documents produced were all kept at police headquarters in the MSP's internal affairs section.

After a hearing, the court delivered an oral opinion in which it discussed relevant decisions by the Court of Appeals relating to the meaning of the words "personnel record[s] of an individual" as that phrase is used in section 10–616(i) of the Act. The court concluded that the documents withheld were all personnel records because they "only exist because they represent the complaints of a citizen personally directed to a State Trooper [because of] misconduct, of being intimidated by racial bias, as opposed to legitimate reasons for stopping our motorists." In the court's words, "these are the kinds of files that are personnel in nature and represent a thrust against an individual trooper."

Later in his opinion, the judge said:

So I felt at the end of the day having read these documents that a fair approach would be to require the State Police to redact the names and identity numbers—all troopers have an identity number—an ID number as well as the complainant's identification so that people looking at these

documents would not be able to tell who the trooper was or who the complainant was, thereby to a great extent protecting the privacy of the trooper while at the same time giving to the Petitioner the right to see the mechanism that the State Police have taken to meaningfully investigate these complaints.

I did not feel it appropriate—and this is on the record—to just claim them all exempt and say NAACP, you're not getting any of it. I did not feel it fair to say you're getting all of them and risk privacy rights of the troopers being invaded and all kinds of other problems.

I believe the fair approach is to find that middle ground which is what I'm going to do. I have worried continuously about the logistics involved in this. There are lots of documents. The names of the troopers are all over these documents. Names of the complainants are all over these documents. It is going to be a difficult job to redact these names. . . .

On August 11, 2008, the hearing judge filed an order, of which the first paragraph read:

Records responsive to Request No. 6 of Plaintiff's Maryland Public Information Act ("MPIA") request dated February 27, 2007 constitute personnel records under the MPIA, however, the Court finds that they may be disclosed provided that the names and any identification number of individual Maryland State Police ("MSP") troopers and the names and identifying information of any complainants are redacted from such records. Accordingly, pursuant to the MPIA, Defendant shall provide Plaintiff with such records, redacting the names and any identification numbers of individual Maryland State Police ("MSP") troopers and the names and any identifying information of any complainants. The process for providing Plaintiff with these redacted records is set forth in paragraph 2–6 below.

To avoid the time and great expense that would be required by having the MSP review and redact the thousands of documents relating to the racial profiling complaints, even

though, as the court noted, some of the documents would be of no interest to the NAACP, the court's order provided, in paragraphs 2 through 6, for a procedure whereby three attorneys designated by the NAACP would review the records in unredacted form and identify from those records which ones they wished the MSP to release to it in redacted form. The designated attorneys were prohibited from disclosing to anyone the names of any Maryland State Trooper or complainant whose names they came across; moreover, the designated attorneys were precluded from taking any notes that reflected such names, and required to destroy all of their notes immediately following the inspection.[2]

The MSP filed, on August 21, 2008, an appeal from the court's order. As worded by the MSP, the question presented is:

Where the circuit court determined that the requested records of police internal affairs investigations are "personnel records" within the meaning of the Maryland Public Information Act, § 10–616(i), which mandates nondisclosure of personnel records, did the circuit court err by ordering an expanded *in camera* review permitting inspection of the personnel records by the requester's counsel and by ordering release of all of the requested personnel records with redaction of names and identification?

The circuit court, on September 4, 2008, granted the MSP's request to stay its August 11, 2008 order.

The NAACP filed a timely cross-appeal. It contends, *inter alia*, that the circuit court erred in holding that the unredacted racial profiling complaint records are "personnel record[s] of an individual" as that term is used in the Act.

On October 15, 2008, after the appeal and cross-appeal had been filed, the United States District Court for the District of

---

**2.** The trial judge reserved ruling regarding the NAACP's complaint that the MSP's inspection and copying fees were excessive. Nevertheless, the court's order was immediately appealable because it was in the nature of an injunction. *See Office of the State Prosecutor v. Judicial Watch, Inc.*, 356 Md. 118, 127–28, 737 A.2d 592 (1999).

Maryland, in the case of *NAACP v. Md. State Police, et al.*, civil action No. FTS–98–1098, ruled on a request for clarification as to what documents the MSP was required to disclose pursuant to its obligation under the 2003 consent decree. The federal court ordered that the MSP disclose to the NAACP redacted copies of the complaints made to the MSP internal affairs division concerning racial profiling. The MSP has already obeyed that order. Accordingly, in this appeal, the issue of whether the complaints of racial profiling need to be produced is not at issue. The district court, however, in an earlier action to enforce the 2003 consent decree, ruled that the consent decree did not give the NAACP the right to inspect and copy investigative files concerning the racial profiling complaints. Therefore, those are the files that are of concern in this appeal.

## II.

■ Numerous past Court of Appeals decisions have stressed that the Maryland Public Information Act must be liberally construed "in order to effectuate the [Act's] broad remedial purpose." *See, e.g., A.S. Abell Publg. Co. v. Mezzanote*, 297 Md. 26, 32, 464 A.2d 1068 (1983). *See also Kirwan v. The Diamondback*, 352 Md. 74, 81–82, 721 A.2d 196 (1998) (collecting cases). The broad purpose of the Act was to ensure "that citizens of the State of Maryland be accorded wide-ranging access to public information concerning the operation of their government." *A.S. Abell*, 297 Md. at 32, 464 A.2d 1068. *See also Fioretti v. Md. State Bd. of Dental Exam'rs*, 351 Md. 66, 73, 716 A.2d 258 (1998) (same) and *Kirwan*, 352 Md. at 81, 721 A.2d 196 (1998) (same). To carry out the Act's broad remedial purpose the General Assembly commanded that the Act "be broadly construed in every instance with the view towards public access." *A.S. Abell*, 297 Md. at 32, 464 A.2d 1068. This means that in doubtful cases, the party requesting information under the Act is favored. *Kirwan*, 352 Md. at 84, 721 A.2d 196 ("[T]he statute should be interpreted to favor disclosure.").

■ Nevertheless, the Act protects certain public records from disclosure. While "personnel record[s] of an individual" are included within the broad definition of the term "public record" (*See* section 10–611(g)), such records are expressly exempt from disclosure under section 10–616(a) and (i). The personnel record exemption is "intended to address the reasonable expectation of privacy that a person in interest has" in his or her personnel records. *Univ. Sys. of Md. v. Balt. Sun Co.,* 381 Md. 79, 99–100, 847 A.2d 427 (2004). *See also* 78 Op. Att'y Gen. 291, 293 (1993).

Racial profiling complaints against Maryland State Troopers do not involve private matters concerning intimate details of the trooper's private life. Instead, such complaints involve events occurring while the trooper is on duty and engaged in public service. As such, the files at issue concern public actions by agents of the State concerning affairs of government, which are exactly the types of material the Act was designed to allow the public to see. *A.S. Abell, supra,* 297 Md. at 32, 464 A.2d 1068. A State Trooper does not have a reasonable expectation of privacy as to such records. *See Worcester Telegram & Gazette Corp. v. Chief of Police of Worcester,* 58 Mass.App.Ct. 1, 787 N.E.2d 602, 607–08 (2003) (materials from internal affairs investigation were not subject to exemption because they were not of a personal nature); *Burton v. York County Sheriff's Dep't.,* 358 S.C. 339, 594 S.E.2d 888, 895 (Ct.App.2004) (sheriff's department records regarding investigation of employee misconduct were subject to disclosure because the public has a right to know how public employees are performing their jobs and how the department handles employee misconduct allegations).

After section 10–616(i) became law, COMAR (Code of Maryland Regulations) 17.04.14 was published in order to facilitate implementation of the Act and to guide custodians who control public access to records under the custody of the Department of Budget and Management. COMAR 17.04.14.02 reads:

.02 Definitions.

A. In this chapter, the following terms have the meanings indicated:

B. Terms Defined.

(1) "Act" means the Public Information Act, State Government Article, § § 10–601–10–630, Annotated Code of Maryland

\* \* \*

(5) Personnel Record.

(a) "Personnel record" means any record, *regardless of physical form, indexed by name or the employee's identification number.*[3]

\* \* \*

(Emphasis added.)

The records here at issue were not indexed by the name of the employee or by the employee's identification number. Instead, all the records were kept in one filing cabinet located in the MSP's Internal Affairs Office. Thus, if COMAR 17.04.14.02 were to control, the records at issue would not constitute "personnel records." COMAR 17.04.14.02 does not, however, control because the MSP's records are not under the custody and control of the Department of Budget and Management. Nevertheless, the regulation is of at least some importance because it demonstrates how an important State agency interprets the words "personnel record[s] of an individual" as used in section 10–616(i) of the Act.

In our view, the provision of the Act that directly addresses the production of investigatory files like the ones here at issue, is section 10–618(a) and (f), which reads, in relevant part:

(a) *In general.*—Unless otherwise provided by law, if a custodian believes that inspection of a part of a public record by the applicant would be contrary to the public interest, the custodian may deny inspection by the applicant of that part, as provided in this section.

---

**3.** In May, 1998, what was once codified as COMAR 06.01.04 was recodified as COMAR 17.04.14

\* \* \*

(f) *Investigations.*—(1) Subject to paragraph (2) of this subsection, a custodian may deny inspection of:

(i) *records of investigations conducted by ... a police department, or a sheriff*;

(ii) an investigatory file compiled for any other law enforcement, judicial, correctional, or prosecution purpose; or

(iii) records that contain intelligence information or security procedures of the Attorney General, a State's Attorney, a city or county attorney, a police department, a State or local correctional facility, or a sheriff.

(2) A custodian may deny inspection by a person in interest only to the extent that the inspection would:

(i) interfere with a valid and proper law enforcement proceeding;

(ii) deprive another person of a right to a fair trial or an impartial adjudication;

(iii) constitute an unwarranted invasion of personal privacy;

(iv) disclose the identity of a confidential source;

(v) disclose an investigative technique or procedure;

(vi) prejudice an investigation; or

(vii) endanger the life or physical safety of an individual.

(Emphasis added.)

It is illogical to believe that the General Assembly, when it adopted a permissible degree exception for "records of investigations conducted by ... a police department," and set forth detailed provisions governing when such records could be withheld (*see* section 10–618(f)) also intended that a custodian of records must withhold investigatory files of a police department under the much more general "personnel record[s] of an individual" exception as set forth in section 10–616(i). Because the records the NAACP seeks in this case fit precisely within the class of records governed by section 10–618(f), we see no reason why its provision should not control, rather than section 10–616(i) of the Act upon, which the MSP relies. In

other words, the specific statutory provision takes precedence over the more general one. Therefore, access to investigative records of the type requested by the NAACP only could be denied if 1) in its reply to the NAACP's request No. 6 the MSP relied on the exception set forth in 10–618(a) and (f) the MSP believed that inspection of the records by the NAACP would be against the public interest, under 10–618(a).

The MSP had 30 days from the date of receipt of request No. 6 to deny the NAACP's access and ten additional working days to give its reason for denial. Because the MSP did not deny inspection based on section 10–618(a) and (i)[4] it never made an attempt to show that section 10–618(a) justified non-disclosure. This would have been difficult to do, in any event, given the obligations imposed on the MSP for the sake of the public by the Federal Consent decree.

In *Kirwan v. The Diamondback*, 352 Md. 74, 721 A.2d 196 (1998), the Court of Appeals had occasion to discuss in some detail the Act's personnel records exemption. *See id.* at 84, 721 A.2d 196. The *Kirwan* case arose when the University of Maryland student newspaper, the Diamondback, filed a public information request to obtain copies of the parking tickets accumulated by Gary Williams, Maryland's basketball coach. *Id.* at 79, 721 A.2d 196. The University of Maryland refused to give the Diamondback access to the records based on section 16–616(i). *Id.* at 80, 721 A.2d 196.

---

**4.** The decision not to rely on section 10–618(i) of the Act may have been influenced by our decision in *Prince George's County v. The Washington Post Co.*, 149 Md.App. 289, 815 A.2d 859 (2003). In that case, the *Washington Post* made a Public Information Act request for, *inter alia,* investigative reports of the Prince George's County Police Department, Criminal Investigation Division regarding police-involved shootings and in-custody deaths. *Id.* at 300, 815 A.2d 859. The County claimed that these files were exempt from disclosure under the investigative records exception set forth in section 10–618(f) of the Act. *Id.* at 332, 815 A.2d 859. More specifically, the County contended that release of the reports "would be contrary to the public interest." *Id.* We held that the County had failed to demonstrate that disclosure of the closed investigatory files would be contrary to the public interest, and therefore held that the Circuit Court for Prince George's County did not err in releasing those files. *Id.* at 333, 815 A.2d 859.

In *Kirwan*, the Court commenced its analysis by stating flatly that "[p]ersonnel records are exempt from disclosure under § 10–616 of the ... [Act]." *Id.* at 82, 721 A.2d 196 (Citing section 10–616(a) and (i)). Judge Eldridge, speaking for the Court, then said:

The term "personnel record" is not expressly defined in the statute. Nonetheless, the language of subsection (i) discloses what type of documents the Legislature considered to be personnel records. The statute lists three categories of documents which are: (1) an application for employment; (2) performance rating; and (3) scholastic achievement. Although this list was probably not intended to be exhaustive, it does reflect a legislative intent that "personnel records" mean those documents that *directly pertain to employment and an employee's ability to perform a job.* Whether Coach Williams received parking tickets has little or nothing to do with his employment, his status as an employee, or his ability as a coach. It means only that he was alleged to have parked illegally.

*Id.* at 82–83, 721 A.2d 196 (emphasis added).

Later in *Kirwan*, the Court said:

As previously discussed, the policy of the Public Information Act is to allow access to public records. Generally, the statute should be interpreted to favor disclosure. In light of this policy, *we do not believe that the General Assembly intended that any record identifying an employee would be exempt from disclosure as a personnel record.* Instead, the General Assembly likely intended that the term "personnel records" *retain its common sense meaning.* This is indicated by the list following the prohibition on the release of the personnel records. The release of information regarding parking tickets accumulated by Coach Williams is not within the personnel records exemption contained in the statute.

*Id.* at 84, 721 A.2d 196 (emphasis added).

The common sense meaning of the term "personnel record[s] of an individual" would not include investigative files of a police department concerning racial profiling, especially in

light of the fact that such files are covered by another section of the Act. Instead, the term should be given a more narrow scope. *See Providence Journal Co. v. Kane,* 577 A.2d 661, 663 (R.I.1990) (personnel records include "employment history, qualifications, job classifications, status within the civil service system ... work schedule ... and overtime history"). The definition quoted from *Providence Journal, supra,* was cited with approval in *Kirwan,* 352 Md. at 84 n. 2, 721 A.2d 196.

It should be emphasized that *Kirwan* includes in its definition of "personnel records" documents that *"directly* pertain to employment and an employee's ability to perform a job." *Id.* at 83, 721 A.2d 196 (emphasis added). In a very broad sense, everything an employee does while on duty might be said to "pertain to employment." But, to be encompassed within the *Kirwan* definition, the records must directly pertain to employment and the "ability [of an employee] to perform a job." The records at issue here did not seek to uncover anything about any employee's job abilities.

In *Governor v. Washington Post Co.,* 360 Md. 520, 759 A.2d 249 (2000), which was decided about two years after the *Kirwan* case, the Court of Appeals, for the first time, included the word "discipline" in its judicially crafted definition of "personnel records." The case arose when two *Washington Post* reporters made separate requests for information pursuant to the Act. *Id.* at 526, 759 A.2d 249. One reporter requested telephone records of "all phones in the Governor's Mansion; his State House Offices; all phones in Shaw House (an annexed office in Annapolis); all phones in the Washington and Baltimore offices; all car phones and cellular phones used by the [G]overnor and anyone on his staff." *Id.* A second reporter requested appointment or scheduling records of the Governor spanning a two-year period. *Id.* In the course of deciding a series of complex issues raised in that case, the Court of Appeals, at one point, focused on the personnel records exception set forth in section 10–616(i) of the Act. Judge Eldridge, once again speaking for the Court of Appeals, said:

The identification of the telephone number which the Governor or a member of his staff called, or the identification of someone with whom the Governor met, concerning a possible future appointment to a judgeship or position in the executive branch of state government, would not amount to a "personnel record" as defined in *Kirwan.* The simple record of what number was called, or with whom the Governor met, about possible *future* employment would not relate to the *discipline, promotion, dismissal, status, job performance or achievement of an existing or former employee.* Again, while the substance of the conversations might in some cases fall in the category of "application for employment" or relate to "hiring," the fact that the Governor or a staff member telephoned or met with an identified individual would not be a "personnel record" under any "commonly understood meaning of the term," *Kirwan,* 352 Md. at 83, 721 A.2d at 200.

*Id.* at 548, 759 A.2d 249 (emphasis added).

It should be noted, parenthetically, that the records requested by the *Washington Post* reporters, in a general sense, dealt with "an employee's" (i.e., the Governor or a member of his staff) employment, but the records like the ones here at issue did not deal directly with an employee's employment or his/her "ability to perform a job."

The MSP maintains that the internal affairs investigation records at issue are exempt from the Act because those records "unquestionably" concern whether "an employee should be disciplined for misconduct." The NAACP replies, accurately, that: 1) when the MSP's representative was deposed in this case, he admitted that unlike disciplinary records, the racial profiling complaint records are not stored in the trooper's personnel file and 2) no racial profiling complaint has ever resulted in disciplinary actions because no complaint thus far has been sustained.

The records at issue clearly do not directly pertain to discipline "of an existing or former employee" but even if they did, to be exempt, the MSP would have to show that the

investigative records exception was inapplicable. *See* section 10–618(a) and (f). We therefore conclude that investigations into the question of whether various State Troopers have engaged in racial profiling, do not constitute "personnel record[s] of an individual" under any "commonly understood meaning of the term." *Kirwan,* 352 Md. at 83, 721 A.2d 196, see *Washington Post,* 360 Md. at 548, 759 A.2d 249.

In support of its position that section 10–616(i) of the Act justified withholding the investigatory files of the internal affairs division, the MSP places great reliance on *Balt. City Police Dep't. v. State,* 158 Md.App. 274, 857 A.2d 148 (2004). That case originated when two defendants, Clark and Smith, were arrested by Detective Michael Dressel, a member of the Baltimore City Police Department. *Id.* at 278, 857 A.2d 148. Clark, who was arrested on drug charges, apparently had reason to believe that Detective Dressel had been accused (in a separate case), of dishonest acts by one or more fellow officers. *Id.* Accordingly, in his criminal case, Clark filed a subpoena directing the Baltimore City Internal Affairs Division of the police department to produce all records concerning accusations by fellow police officers about Dressel's honesty. *Id.* The Baltimore City Police Department filed a motion to *quash* the subpoena on two grounds: 1) that the records requested were protected from disclosure by the "personnel records" exception set forth in section 10–616(i) of the Act and 2) that provisions of the Law Enforcement Officer's Bill of Rights (LEOBR), as set forth in Md.Code (2003), § 3–104(n), (*o*) of the Public Safety Article, afforded Detective Dressel protection from the disclosure requested. *Id.* at 282–83, 857 A.2d 148. Without conducting an *in camera* review of the records, the circuit court ordered the Police Department to disclose to Clark "the portions of the IAD [Internal Affairs Division] file that contained 'any statement made by a named police witness that [Officer Dressel] engaged [in dishonesty] in the past.'" *Id.* at 278, 857 A.2d 148.

The Police Department appealed that order to this Court. On appeal, the appellee (Clark) did not dispute the Police Department's contention that the requested documents were

exempt from disclosure under section 10–616(i) of the Act. *Id.* at 282–83, 857 A.2d 148. Clark could afford to make that concession because the law was well established that even if the records were confidential under the LEOBR and/or under the Act, the confidential nature of the records did not guarantee insulation of the confidential matter from disclosure. Instead, the law required that Dressel's interest in confidentiality be balanced, in this context, against the confrontation and due process rights of the defendant under the Sixth and Fourteenth Amendments. *Id.* at 286, 857 A.2d 148 (citing *Robinson v. State,* 354 Md. 287, 308, 730 A.2d 181 (1999)).

In the *Baltimore City Police Department* case, we said, at the outset:

> [T]he Department asserts that IAD's file concerning its investigation into allegations of dishonesty on the part of Detective Dressel *qualifies as a personnel record,* and appellee does not contend otherwise. Guided by *Kirwan, we see no reason to disagree with the Department's position on this point.*

158 Md.App. at 283, 857 A.2d 148 (emphasis added).

We went on to agree with Clark that although the records were confidential, they were nevertheless not privileged. *Id.* at 287 n. 7, 857 A.2d 148. Also, we said that, on the record presented, we could not decide whether Clark's right to a fair trial and to confront witnesses outweighed Detective Dressel's privacy interest. *Id.* at 286–87, 857 A.2d 148. Relying on *Reynolds v. State,* 98 Md.App. 348, 633 A.2d 455 (1993) and *Blades v. Woods,* 107 Md.App. 178, 667 A.2d 917 (1995), we also said:

> *Reynolds,* of course, dealt with the discoverability of information that is made privileged by statute, not, as here, made confidential by statute. . . . Two years later, however, we called for the same procedure to be conducted when the matter sought to be discovered was contained, as here, in the internal investigatory files of a police officer. *Blades v. Woods,* 107 Md.App. 178, 186, 667 A.2d 917 (1995). Recognizing that IAD files are confidential, we determined it

necessary to remand the case "for proceedings that will balance [Blades's] legitimate need for relevant information in the records against (1) the privacy rights of other persons and (2) the custodian's duty to maintain confidentiality." *Id.* at 185, 667 A.2d 917 (footnote omitted).

As we did in *Reynolds,* we stated that, on remand, Blades first would have to proffer his need for disclosure and persuade the court that there is a reasonable possibility that the information in the records will assist his case. *Id.* at 186, 667 A.2d 917. "In reviewing this proffer, the court should consider the relationship between the information sought and the nature of the case, as well as the precise issue that the information is expected to address." *Id.*

We went on to say, in *Blades:* Once the [individual] has demonstrated such need, the trial judge must determine what police department records exist and which of those records are confidential. This determination should be made in camera. Any reviewed records that are deemed not relevant or usable should be sealed and filed separately. Any records that appear to be discoverable shall then be reviewed at an expanded in camera hearing, with counsel of record present as officers of the court. *Id.*

158 Md.App. at 290–92, 857 A.2d 148.

Because the procedures set forth in *Reynolds* and *Blades* were not followed, we remanded the case to the circuit court for further proceedings consistent with the opinion. *Id.* at 291–93, 857 A.2d 148.

■ The *Baltimore City Police Department* case, contrary to MSP's argument, is not here dispositive.[5] No request was made by Clark, pursuant to the Public Information Act, and the custodian's claim that the documents were privileged under the Act went unchallenged. Moreover, the dispositive

---

**5.** It should be noted that in contrast to the *Baltimore City Police Department* case, here competing constructions of the phrase "personnel record[s] of an individual" had the benefit of adversary testing. Also, the factual record was here developed fully and the matter was extensively briefed by both sides.

question, as we stressed, was not whether the material was protected from disclosure under the Act or under the LEOBR, but whether the documents were discoverable in a criminal case. *Id.* at 287, 857 A.2d 148. Lastly, the documents the trial court ordered produced in the *Baltimore City Police Department* case (records as to one officer regarding one particular character trait of that officer) comes far closer to meeting the common sense meaning of the phrase "personnel record[s] of an individual" than the records here at issue where the NAACP does not seek to impeach any officer and is not even interested in obtaining the names of any State Trooper. Instead, in this case, the appellee-cross-appellant simply wants to find out if a state agency is properly overseeing its officers. The difference in what is sought is of great importance because in "every instance" the Act is to be construed so that citizens are "accorded wide-ranging access to public information concerning the operation of their government." *A.S. Abell,* 297 Md. at 32, 464 A.2d 1068.

For all the above reasons, we hold that the investigatory files at issue do not constitute "personnel record[s] of an individual" as that phrase is used in section 10–616(i).

### III.

As an alternative argument, the MSP contends that the records at issue "are protected by the Law Enforcement Officer's Bill of Rights as set forth in sections 3–104(n) and (*o*) of the Public Safety Article." [6] This issue was neither raised

6. The LEOBR provisions to which the Department refers are found in Maryland Code (2003), § 3–104(n), (*o*) of the Public Safety Article. Subsection (n) provides:

*Information provided on completion of investigation.—*
(1) On completion of an investigation and at least 10 days before a hearing, the law enforcement officer under investigation shall be:
(i) notified of the name of each witness and of each charge and specification against the law enforcement officer; and
(ii) provided with a copy of the investigatory file and any exculpatory information, if the law enforcement officer and the law enforcement officer's representative agree to:

nor decided below and therefore will not be considered in this appeal. *See* Md. Rule 8–131(a) (except for jurisdictional issues, an appellate court will not ordinarily consider any issue neither raised or decided in the trial court). *See also City of Frederick v. Randall Family, LLC,* 154 Md.App. 543, 575, 841 A.2d 10 (2004).

## IV.

■ In its cross-appeal, although the NAACP argues that the records at issue were not "personnel record[s] of an individual" as that phrase is used in section 10–616(i), it also argues, in the alternative, that the trial court should not have addressed that issue because: 1)it was willing to have the records redacted to conceal the names of the State Troopers against whom the complaints were made, and 2) if those redactions were made, the records, even if they came within the ambit of section 10–616(i), must nevertheless be produced pursuant to section 10–614(b)(3)(iii) of the Act, which provides that a custodian of records who denies an application shall "permit inspection of any part of the record that is subject to inspection and is reasonably severable."

---

1. execute a confidentiality agreement with the law enforcement agency not to disclose any material contained in the investigatory file and exculpatory information for any purpose other than to defend the law enforcement officer; and

2. Pay a reasonable charge for the cost of reproducing the material. (2) The law enforcement agency may exclude from the exculpatory information provided to a law enforcement officer under this subsection:

 (i) the identity of confidential sources;

 (ii) nonexculpatory information; and

 (iii) recommendations as to charges, disposition, or punishment. Subsection (*o*) reads:

 *Adverse material.*—(1) The law enforcement agency may not insert adverse material into a file of the law enforcement officer, except the file of the internal investigation or the intelligence division, unless the law enforcement officer has an opportunity to review, sign, receive a copy of, and comment in writing on the adverse material.

 (2) The law enforcement officer may waive the right described in paragraph (1) of this subsection.

We reject this alternative argument. First, the MSP did not accept the NAACP's suggestion that the records be redacted, which meant that the issue the trial judge first resolved was squarely presented to him. Second, section 10–614(b)(3)(iii) did not allow the court to dodge the issue because, if the records were in fact "personnel record[s] of an individual," they would not be transformed into another category of records by simply redacting names from them.[7]

In summary, the trial court did not err in addressing head on, the question of whether the exemption from disclosure set forth in 10–616(i) was applicable.

## V.

■ The MSP argues:

In this case, the [Act] does not authorize an expanded *in camera* review, as was ordered by the circuit court, which would allow inspection of unredacted personnel records by the requesting party's counsel. Instead, the only form of *in camera* review authorized by the MPIA is prescribed in § 10–623, "Judicial review." Subsection (c) of this statute, entitled "Court" authorizes only "[t]he court"—and no one else—to "examine the public records in camera...." As defined by the Court of Appeals, review or inspection *"in camera"* means [a] trial judge's private consideration of evidence. *Ehrlich v. Grove*, 396 Md. 550, 553 n. 3, 914 A.2d 783 (2007) (citing Black's Law Dictionary 775 (8th ed. 2004)).

The above argument may very well have had merit if one or more of the exemptions set forth in the Act was applicable. But, as explained above, the NAACP was entitled to the records in unredacted form inasmuch as the only exemption

---

7. We also note that even if it could be said that redacting names from documents made them "part of the record that is subject to inspection" it is far from clear that the act of redaction made the records "reasonably severable." After all, the trial judge found that the redaction of names from thousands of documents was going to be difficult. It may have been for this reason that the trial judge never indicated that he thought that section 10–614(b)(3)(iii) had any relevance.

the MSP relied on for its denial (§ 10–616(i) of the Act) did not apply. The procedure that the court permitted and which the NAACP still is willing to accept, gave the MSP more than it was entitled to under the Act. Put another way, the court could have simply required the MSP to copy all the records mentioned in request No. 6. Thus, the trial judge did not commit prejudicial error when it ordered expanded *in camera* review in an effort to reduce the number of records that are to be produced and redacted. *See Flores v. Bell*, 398 Md. 27, 33, 919 A.2d 716 (2007) (to prevail in an appeal, an appellant must prove prejudice as well as error).

**PORTION OF ORDER PROVIDING THAT RECORDS SOUGHT BY APPELLEE–CROSS APPELLANT WERE "PERSONNEL RECORDS" WITHIN THE MEANING OF THE MARYLAND PUBLIC INFORMATION ACT VACATED; REMAINDER OF ORDER DATED AUGUST 11, 2008, AFFIRMED; COSTS TO BE PAID BY APPELLANT–CROSS APPELLEE.**

DAVIS, Judge, concurring.

I am constrained to file this concurring opinion, not because I take issue with anything written in the Majority opinion, but rather, because I believe greater emphasis on the precipitating event, *i.e.*, the Consent Decree, is warranted. Simply put, as the Majority postulates, ". . . it is the purpose-to find out if a State agency is properly overseeing its officers—for which the NAACP seeks the records" which is determinative of whether they are personnel records. Op. at 378–79, 988 A.2d at 1086–87. At the outset, I have engaged in an exhaustive search which has failed to uncover prior decisions in which the purpose for requesting records of a law enforcement agency was to determine compliance, *vel non*, with the directive to desist from behavior involving alleged discriminatory practices, as set forth in a federal court decree. Notwithstanding, I write separately, although I am in complete agreement with the well-written Majority opinion, particularly its holding that, under the facts *in this case*, ". . . the specific statutory provi-

sion (SG § 10–618(f)) takes precedence over the more general one (SG § 10–616(i))." Op. at 370–71, 988 A.2d at 1081–82.[1]

The Majority quotes the trial judge's ruling which, in my view was erroneous, when he opined that documents withheld were personnel records because they

"only exist because they represent the complaints of a citizen personally directed to a State Trooper [because of] misconduct of, being intimidated by racial bias, as opposed to legitimate reasons for stopping our motorists...." ... "these are the kinds of files that are personnel in nature and represent a thrust *against an individual trooper.*" Op. at 364, 988 A.2d at 1077–78.

The circuit court later in its ruling concluded that the fair approach would be to redact the names and identities of the troopers to protect their privacy "while at the same time giving to [appellee] *the right to see the mechanism that the State Police have taken to meaningfully investigate these complaints.*" Finally, although the Court's August 11, 2008 Order declared records responsive to request No. 6 as "personnel records" under the MPIA, during the hearing, the Court stated:

I am admonishing the NAACP that the denied records *will reveal whether the MSP at the institutional level* is properly handling racial profiling investigations, and therefore com-

---

1. I am mindful of the holding of the Court of Appeals in *Office of the Attorney General v. Gallagher,* 359 Md. 341, 354, 753 A.2d 1036 (2000) to the effect that "SG § 10–618(f) does not override other exemptions under the Act." In *Gallagher,* the Court made clear that a record exempt from disclosure under § 10–615, 10–616 or 10–617, or any other subsection that prohibits a custodian from granting disclosure, cannot otherwise be disclosed through the custodian's discretionary authority under § 10–618(f) by virtue of the fact that the document is in an investigatory file. "... [T]he discretionary authority under § 10–618 cannot arise if the record cannot be disclosed because of a mandatory provision in § § 10–615 or 10–617." *Id.* at 354, 753 A.2d 1036. However, this holding would only be applicable if the "other exemption," *i.e.,* SG § 10–616(i) is applicable. Because we conclude the records at issue are not personnel records, § 10–616 is not applicable.

plying with the letter and spirit of the consent decree as well as what the law is in the state.

As the Majority points out, Judge Eldridge, writing for the Court in *Kirwan v. The Diamondback*, 352 Md. 74, 721 A.2d 196 (1998), observed that the term " 'personnel record' is not expressly defined in the statute," but that "[t]he statute lists three categories of documents which are (1) an application for employment; (2) performance rating; and (3) scholastic achievement." *Kirwan,* 352 Md. at 82–83, 721 A.2d 196. *Kirwan* further observed that, " . . . although this list was probably not intended to be exhaustive, it does reflect a legislative intent that 'personnel records' mean those documents that *directly pertain to employment and employee's ability perform a job." Id.* (emphasis added). Records of the hiring, discipline, promotion and dismissal of employees have also been mentioned as coming within the definition of personnel records. *Id.* at 83, 721 A.2d 196; *Governor v. Washington Post Co.*, 360 Md. 520, 548, 759 A.2d 249 (2000); *Prince George's County v. Washington Post Co.*, 149 Md.App. 289, 322–23, 815 A.2d 859 (2003).

As the Majority further points out, the definition of personnel records as directly pertaining to "employment *and* employee's ability to perform a job" is in the conjunctive and certainly is not applicable in the case *sub judice,* where the behavior at issue has nothing to do with a trooper's "ability." In fact, as will be discussed, *infra,* the basis and the reason for obtaining the records is not principally concerned with the performance of the troopers, themselves. The only category arguably relevant to the issue at hand is the discipline of state troopers as a result of complaints of discriminatory practices, but, as the Majority points out, records of complaints filed, in this case, fail to disclose that any discipline has been meted out.

That brings me to my central thesis, *i.e.*, that the basis for the right to obtain the records, in the first place, was mentioned by the trial judge who, unfortunately, after identifying what I believe should have been the central focus, *i.e.,* the

records are the only means by which compliance with the consent decree can be demonstrated, the court then repeatedly, reverted to referencing the records as "personnel in nature and a thrust against an individual trooper." What was not accorded proper consideration by the circuit court, in my judgment, was that—putting aside for the moment the question of redaction [2]—irrespective of whether the records served a dual purpose, it is beyond cavil that the most predominant rationale for maintaining the records at issue, as the circuit court recognized, was "to give the [appellee] the right to see the mechanism that the State police have taken to meaningfully investigate these complaints." The denied records, the court later iterated, "will reveal whether the MSP *at the institutional level* is properly handling racial profiling investigations and therefore complying with the letter and spirit of the consent decree as well as what the law is in the state." In the same vein, the circuit court acknowledged that the NAACP was not seeking to obtain information regarding individual troopers; rather, it was seeking "to glean information *about the internal mechanics of the State police and whether or not they have adopted policies and protocol to 'meaningfully investigate' complaints of . . . racial profiling.*" Simply put, the records were sought to monitor the Department's supervision of the troopers, not the job performance of individual state troopers.

The records that were sought are not personal, but rather involve complaints from citizens and the action taken by the Department in response thereto and intended to serve as a basis for making a determination as to the Agency's compliance with the consent decree. The manner in which the state troopers discharge their duties is relevant only in that it provides a predicate for the ultimate determination of the Department's compliance with the consent decree. Thus, the basis for the circuit court's ruling that, because the records

---

2. While redaction of the names and identification numbers of the troopers is preferable, the character of the records as personnel records is unaffected by whether they are redacted.

"represent a thrust against an individual trooper," *ergo* "these are the kinds of files that are personnel in nature," is patently predicated on a false premise.

We have previously held that, when a party seeks disclosure of records made confidential by statute, trial courts must engage in a balancing procedure in making their determination to permit such a disclosure. That is, a trial court must weigh the requestor's " 'legitimate need for relevant information in the records against (1) the privacy rights of other persons and (2) the custodian's duty to maintain confidentiality.' " *Baltimore City Police Dep't v. State,* 158 Md.App. 274, 290, 857 A.2d 148 (2004) (quoting *Blades v. Woods,* 107 Md. App. 178, 186, 667 A.2d 917 (1995)). Analogizing a request for confidential records with a request for privileged records, we have explained that the person requesting the documents would "have to proffer his need for disclosure and persuade the court that there is a reasonable possibility that the information in the records will assist his case." *Id.* (citing *Reynolds v. State,* 98 Md.App. 348, 633 A.2d 455, (1993)). We have further elaborated on this requirement, explaining that " 'the court should consider the relationship between the information sought and the nature of the case, as well as the precise issue that the information is expected to address.' " *Id.* (quoting *Blades,* 107 Md.App. at 186, 667 A.2d 917). Implicit in this mandatory analysis is a consideration of the *purpose* for the request.

Even if the requested information in the case *sub judice* qualified as confidential, the purpose of the request in the case *sub judice* cannot be given short shrift. The "legitimate need," or purpose for the request, advanced by the NAACP in this case implicates a matter of public interest and the implementation of a decree of a federal court. Unquestionably, the records requested bear directly on the precise issue that they were expected to address, *i.e.,* compliance with the federal decree and the purpose for which they were sought is comparable to the basis for providing criminal defendants documents to ensure protection of their confrontation and due process

rights. *Baltimore Police, supra; Robinson v. State*, 354 Md. 287, 730 A.2d 181 (1999); *Davis v. Alaska*, 415 U.S. 308, 319, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Zaal v. State*, 326 Md. 54, 81–87, 602 A.2d 1247 (1992).

The Majority opinion characterizes the belief that any notion that the General Assembly intended that a custodian of records could withhold investigatory files of a police department under the more general "personnel record[s] of an individual" exception as set forth in 10–616(i) as "illogical," when it adopted an exception for " 'records of investigations conducted by … a police department,' and set forth detailed provisions governing when such records could be withheld (see Section 10–618(f))." Op. at 370, 988 A.2d at 1081. As I indicated earlier, I concur with the Majority's foregoing discernment of the legislative intent. But, more to the point, although the record reflects that there have been serious attempts to reach an accommodation in producing the records at issue, rather than "illogical," it would be "unseemly" that the General Assembly, when it adopted an exception for "records of investigations conducted by a police department," intended that a party to a consent decree could render that decree nugatory simply by seeking solace in a related, but less definitive statutory provision, thereby denying access to the only records which will confirm or dispel assertions of noncompliance with that decree. And, it would be particularly egregious if that party were permitted to accomplish the feat by simply shrouding the subject records with the denomination, "personnel." Judge Deborah Eyler and Judge Woodward have authorized me to advise that they join my concurring opinion, as well as the majority opinion.

DEBORAH S. EYLER and WOODWARD, JJ., join.

KEHOE, Judge, concurring.

While I agree with much in the well-reasoned and persuasive Majority opinion, I would affirm the judgment of the

circuit court for different reasons. I write separately to provide a brief explanation.[1]

At issue in this case are the records of the MSP documenting its investigations of 94 complaints, filed between 2003 and 2007, alleging that MSP officers utilized racial profiling in making traffic stops. The MSP concluded that the charges of racial profiling could be sustained in none of them. As the Majority opinion explains, the NAACP seeks to inspect these records as part of its efforts to determine whether the MSP is complying with its commitments to adopt and implement policies and procedures to end racial profiling.

Prior to its ruling, the circuit court made an *in camera* inspection of each file, totaling, in the words of the court, "7– or 8,000 pages." In rendering its ruling from the bench, the circuit court identified personnel records as "[']documents that directly pertain to employment and an employee's ability to perform a job,['] right out of a case." [2] The court stated:

> [T]hese files that I have looked through only exist because they represent the complaints of a citizen personally directed at a state trooper of misconduct, of being intimidated by racial bias as opposed to legitimate reasons for stopping our motorists.
>
> So as a generic idea, I believe that overall, therefore, these are the kinds of files that are personnel in nature and represent a thrust against an individual trooper.

---

1. In order to be consistent with the Majority opinion, I will refer to appellant as the "MSP," appellee as the "NAACP," the Maryland Public Information Act, MD.CODE ANN. STATE GOVT §§ 10–611–10–630 (1984, 2009 Rep. Vol.) as the "Act" and the Law Enforcement Officer's Bill of Rights, MD.CODE ANN PUB SAFETY § 3–101 *et seq.* (2003), as the "LEOBR." Unless otherwise noted, all statutory references are to the Act.

2. The transcript makes it clear that the circuit court was referring to *Kirwan v. The Diamondback*, 352 Md. 74, 83, 721 A.2d 196 (1998) (" '[P]ersonnel records' mean those documents that directly pertain to employment and an employee's ability to perform a job.")

## I.

I respectfully part company with the Majority at two points in its analysis. I believe that the troopers who were the subject of the complaints have privacy interests in the records in question and I further believe that the files themselves should be considered as "personnel records" under the Act.

The Majority states that, since the complaints involve events occurring while the troopers were on duty and engaged in public service, the officers who were the subject of the complaints did not have a reasonable expectation of privacy as to such records. With all respect to the Majority, I do not believe this proposition is consistent with the analysis employed by the Court of Appeals in *Robinson v. State,* 354 Md. 287, 308, 730 A.2d 181 (1999), and this Court in *Baltimore City Police Dept. v. State,* 158 Md.App. 274, 282–83, 857 A.2d 148 (2004). Both decisions recognize that police officers who are the subject of internal disciplinary investigations have privacy interests in the investigative records.

*Robinson* involved a prosecution for armed robbery. During the trial, Robinson sought access to statements made by the arresting officers as a result of an internal affairs division ("IAD") investigation of the circumstances surrounding his arrest on the basis of the *Jencks/Carr*[3] rule. 354 Md. at 298, 730 A.2d 181. One of the arguments raised by the State on appeal was that the prior statements made by the arresting officers were confidential under the LEOBR and thus, were not "available" to the police for disclosure to the defendant. *Id.* at 304, 730 A.2d 181. In assessing this contention, the Court of Appeals concluded that what was then § 728(5)(b)(iii) and (iv) of the LEOBR (now codified as MD.CODE ANN. PUB.

---

**3.** In *Carr v. State* 284 Md. 455, 472–73, 397 A.2d 606 (1979), the Court of Appeals adopted principles earlier enunciated by the Supreme Court in *Jencks v. United States,* 353 U.S. 657, 668, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957), and held that, for cross-examination purposes, a defendant is entitled to inspect prior written statements of crucial State's witnesses who have testified at trial to determine whether those statements are inconsistent with their trial testimony. *See Robinson,* 354 Md. at 300–04, 730 A.2d 181.

SAFETY § 3–104(n)), "limits access to the internal investigation file to the affected officer, and then only to exculpatory information, and does not expressly provide for access by anyone else.... These provisions deal only with the rights of the officer and serve as a protection for them." 354 Md. at 308, 730 A.2d 181. The Court went on to hold that an officer's right in the confidentiality of IAD records was not absolute and "must be balanced ... against the confrontation and due process rights of the defendant." *Id.* at 309, 730 A.2d 181.

In *Baltimore Police,* a defendant in a criminal case subpoenaed the file of an IAD investigation of a police officer who was a witness against him. 158 Md.App. at 280, 857 A.2d 148. The trial court denied the police department's motion to quash the subpoena and the department appealed. *Id.* This Court stated "[t]he Department asserts that IAD's file concerning its investigation into allegations of dishonesty on the part of [the police officer] qualifies as a personnel record [under the Act], and appellee does not contend otherwise. Guided by *Kirwan,* we see no reason to disagree...." 158 Md.App. at 282–83, 857 A.2d 148. Later in the opinion, this Court stated that "the IAD records at issue ... are made confidential by SG § 10–616." *Id.* at 287 n. 7, 857 A.2d 148. Citing *Robinson,* we concluded that the police officer's privacy interest was not absolute but must be weighed against the countervailing interests in favor of disclosure. *Id.* at 286, 857 A.2d 148.

I also must part company with the Majority's conclusion that the records in question should be treated as "records of investigations conducted by ... a police department," under § 10–618(f), instead of personnel records pursuant to § 10–616(i).

While the term "personnel record" is not defined in the Act, the Court of Appeals has explained that the term embraces records that relate to the "discipline, promotion, dismissal, status, job performance or achievement" of an employee. *Governor v. Washington Post,* 360 Md. 520, 548, 759 A.2d 249 (2000); *see also Kirwan,* 352 Md. at 83, 721 A.2d 196 (" '[P]ersonnel records' mean those documents that directly pertain to

employment and an employee's ability to perform a job.") After its *in camera* inspection of the records, the circuit court characterized them as "complaints of a citizen personally directed at a state trooper of misconduct, of being intimidated by racial bias." Whether a state trooper uses race as a factor in determining whether to initiate a traffic stop bears ineluctably upon that officer's job performance. If the MSP were to conclude that a trooper was guilty of racial profiling, discipline would surely follow.

Certainly, the records were generated by investigations by the MSP. This fact should not render the files subject to disclosure under § 10–618(f). The Court of Appeals considered a similar question in *Attorney General v. Gallagher,* 359 Md. 341, 348, 753 A.2d 1036 (2000), and held that specific exemptions under the Act were applicable to a request under the Act to inspect an investigative file: "[n]othing in the language or history of the Public Information Act supports the view that, when records are contained within an investigatory file, § 10–618(f)(2) displaces all other exemptions in the statute." *Id.*[4]

## II.

Because I conclude that the records in question are "personnel records," I will address the principal contention advanced by the MSP to this Court, namely, that there is nothing in the Act to permit redaction or partial disclosure of a personnel record. The MSP's position is unpersuasive.

The provision in question is § 10–614(b)(3)(iii) which requires a custodian who denies inspection of a record "to

---

4. Under the Majority's holding, the record of an investigation by a law enforcement agency as to whether one of its employees committed noncriminal employment-related misconduct would be open to public inspection while the record of a similar investigation of an employee of any other public agency would not be. *See* 78 Op. Att'y Gen. 291 (1993) (The Act does not permit a custodian to disclose records pertaining to a complaint that employees in a circuit court clerk's office engaged in discriminatory behavior.). There is nothing in the Act to suggest that the General Assembly intended such an incongruous result.

permit inspection of any part of the record that is subject to inspection and is reasonably severable." The MSP's position that § 10–614(b)(3)(iii) does not apply to personnel records is not consistent with the legislative history of the Act.

The Act was enacted in 1970 and was codified as Article 76A of the Code. *Faulk v. State's Attorney for Harford Co.*, 299 Md. 493, 506, 474 A.2d 880 (1984). At that time, the statutory predecessors to the current § 10–614(b) (Grant or denial by custodian), § 10–615 (Required denials-In General), § 10–616 (Required denials-Specific records), § 10–617 (Required denials-Specific information), and § 10–618 (Permissible denials), were all contained in Article 76A § 3. Section 3 did not contain a provision requiring a custodian to sever disclosable from non-disclosable records.

In 1976, significant amendments were proposed to the Act. The proposed amendments included revising § 3(d) to read in pertinent part as follows:

(d) Whenever the custodian denies a written request for access to any public record or any portion thereof under this section, [the custodian shall provide a written statement of the grounds for the denial]. . . . In addition, any reasonably severable portion of a record shall be provided to any person requesting such a record after deletion of those portions which may be withheld from disclosure.

With regard to the proposed amendment to § 3(d), the House Constitutional and Administrative Law Committee reported:

[T]he section permitting the withholding of public information has been modified throughout so that if only a portion of the record should be denied and the record is severable the remainder must be disclosed. *By amending the law in this manner, it makes it clear that in construing even the withholding section the law should be viewed in a manner which would permit disclosure.*

House Constitutional and Administrative Law Committee 1976 REPORT TO THE GENERAL ASSEMBLY OF MARYLAND at 111 (emphasis added).

The report makes it clear that the legislature intended that exempt records, including personnel records, be subject to reasonable severance.[5]

The NAACP is not interested in the records to obtain information regarding individual troopers. Instead, the NAACP is seeking, in the words of the circuit court, "to glean information about the internal mechanics of the State Police and whether or not they have adopted policies and protocol to 'meaningfully investigate' ... complaints of racial profiling...." Consistent with the institutional, as opposed to individual, focus of its inquiry, the NAACP offered to accept records in which the names of the officers involved were redacted. Whether stemming from the Act or the LEOBR, a trooper's privacy rights extend only to the contents of his or her own investigatory file; an individual trooper has no privacy interest in the policies and procedures of the MSP.

The statutory mandate of § 10–614(b)(3)(iii) must be interpreted in light of the clearly-identified purposes of the Act, both as articulated in the legislative history and as recognized by decisions of this Court and the Court of Appeals.[6]

---

5. The 1976 proposal was enacted by Chapter 1006 of the Laws of 1978. *See* IV MD. LAWS 1978 at 2869 *et seq.* Former Art. 76A § 3(d) is now codified as § 10–614(b). When the State Government Article was enacted by Ch. 284 of the Acts of 1984, Article 76A, § 3, was "transferred, without amendment" to separate sections in the new Article. II LAWS OF MARYLAND 1984 at 981. "There is no indication in the legislative history that the separate sections of Title 10, subtitle 6, of the State Government Article were to be interpreted differently from the separate subsections of former Article 76A, § 3." *Gallagher*, 359 Md. at 353, 753 A.2d 1036.

6. As Judge Kenney explained for this Court:
 The MPIA provides that "all persons are entitled to have access to information about the affairs of government and the official acts of public officials and employees." [ ] SG § 10–612(a). The Court of Appeals in *Fioretti v. Maryland State Bd. of Dental Exam'rs*, 351 Md. 66, 73, 716 A.2d 258 (1998) (citation omitted), reiterated that " 'the provisions of the [MPIA] reflect the legislative intent that citizens of the State of Maryland be accorded wide-ranging access to public information concerning the operation of their government.' " "The intent of the MPIA in favor of disclosure of public records is unmistakable." *Baltimore v. Burke*, 67 Md.App. 147, 153, 506 A.2d 683,

After its *in camera* review, the circuit court determined that redaction of identifying information would protect the privacy interests of the troopers. As the trial court stated, "[i]f you don't know who the trooper was, it really can't be personnel in nature, and it can't be an invasion of a trooper's privacy." The circuit court further determined that it would be reasonable to permit inspection if "the names and any identification numbers of individual ... troopers and the names and identifying information of any complainants" were redacted. These conclusions are tantamount to a determination that the identifying information was "reasonably severable" from the rest of the records.[7]

### III.

The circuit court noted that, in its view, there are "thousands of documents" within the files that "are not particularly relevant to ... the request of the NAACP." In order to reduce the time and expense associated with redacting the files, the circuit court ordered the MSP to permit inspection of the unredacted files by three attorneys of Venable LLP (the NAACP's trial and appellate counsel) with safeguards designed to prevent disclosure of information regarding the identity of either the troopers or the complainants. *See* Majority op. at 365–67, 988 A.2d at 1077–78.

---

*cert. denied*, 306 Md. 118, 507 A.2d 631 (1986). Therefore, as the Court of Appeals has further explained, the provisions of the statute "must be liberally construed ... in order to effectuate the [MPIA's] broad remedial purpose[,]" *A.S. Abell Pub. Co. v. Mezzanote*, 297 Md. 26, 32, 464 A.2d 1068 (1983), and in favor of permitting inspection of a public record,[] "with the least cost and least delay to the person or governmental unit that requests the inspection." *Kirwan v. The Diamondback*, 352 Md. 74, 80–81, 721 A.2d 196 (1998) (citing SG § 10-612(b)).
*Prince George's County v. Washington Post*, 149 Md.App. 289, 307–08, 815 A.2d 859 (2003) (footnotes omitted).

**7.** As the Majority points out, the circuit court alluded to the scope of the task involved in redacting the records. I do not, however, interpret the circuit court's comment as indicating that the redactions cannot be accomplished. In any event, in light of the public importance of the racial profiling issue, the effort is fully warranted.

The circuit court intended the "eyes only review" to reduce costs and expedite the eventual inspection of redacted records. While there is no specific authorization for such a procedure in the Act, a court has the general authority to appoint special officers to assist it in its functions "if advisable in a specific proceeding." MD.CODE ANN. CTS. & JUD. PROC. § 2–102(a) (1973, 2006 Rep. Vol.).

The records in this case are confidential, not privileged, and a police officer's privacy interest in such records is not absolute. *Robinson,* 354 Md. at 308, 730 A.2d 181. This Court has approved an expanded *in camera* review [8] of an internal affairs investigation report in *Baltimore Police v. State,* 158 Md.App. at 290–91, 857 A.2d 148. *See also Blades v. Woods,* 107 Md.App. 178, 186, 667 A.2d 917 (1995). The circuit court did not specifically allude to its authority under Cts. & Jud. Pro. § 2–102, but specificity in this context is not required. *See, e.g., Davidson v. Seneca Crossing,* 187 Md.App. 601, 628 n. 4, 979 A.2d 260 (2009) (trial court is presumed to know and follow the law; a detailed recitation of every step of its analysis in reaching a decision is not necessary).

In light of the safeguards imposed by the circuit court, it did not err in authorizing counsel, as officers of the court, to examine the documents outside of its immediate presence.

I am authorized to state that Judge ZARNOCH joins in this opinion.

---

**8.** In Maryland the term *"in camera* review" means "[a] judge's private consideration of evidence." *See Ehrlich v. Grove,* 396 Md. 550, 553 n. 3, 914 A.2d 783 (quoting BLACK'S LAW DICTIONARY 775 (8th ed. 2004)). An "expanded *in camera* review" involves a judge's review of evidence with counsel present. *Ehrlich,* 396 Md. at 553–54 n. 3, 914 A.2d 783.