23 A.3d 205

MONTGOMERY COUNTY MARYLAND, et al.

v.

Edward SHROPSHIRE, et al.

No. 84, Sept. Term, 2010.

Court of Appeals of Maryland.

June 29, 2011.

Karen L. Federman Henry, Division Chief (Marc P. Hansen, Acting County Atty., and Kathryn Lloyd, Associate County Atty., Office of the County Attorney, Rockville, MD), on brief, for appellants.

Martha L. Handman (Martha L. Handman, P.C., Gaithersburg, MD), on brief, for appellees.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS, BARBERA, JJ.

BATTAGLIA, J.

In this declaratory judgment action,[1] we consider the intersection of the Maryland Public Information Act, Maryland Code (1984, 2009 Repl.Vol.), Sections 10–611 *et seq.* of the State Government Article,[2] with the authority of the Montgomery County Office of the Inspector General to obtain records of a police department internal investigation. Specifically, we are asked whether records of an investigation undertaken by the County Police Department's Internal Affairs Division, related to alleged violations of administrative rules of the Department by Sergeant Edward Shropshire and Captain Willie Parker–Loan, Appellees, in connection with an automobile accident involving Assistant Fire Chief Gregory J. DeHaven, can be disclosed to the County's Inspector General.

After a hearing on the parties' cross-motions for summary judgment, the Circuit Court for Montgomery County ordered the disclosure of records of the internal investigation, but not

---

1. Sections 3–401 *et seq.* of the Courts and Judicial Proceedings Article, Maryland Code (1974, 2006 Repl.Vol.), otherwise known as the Maryland Uniform Declaratory Judgments Act, govern claims for declaratory relief.

2. All references to the Maryland Public Information Act throughout are to Sections 10–611 *et seq.* of the State Government Article, Maryland Code (1984, 2009 Repl.Vol.), unless otherwise noted.

information "of a personal nature." Both parties appealed to the Court of Special Appeals, but, before the appeal could be decided by the intermediate appellate court, we granted a Petition for Writ of Certiorari filed by Sergeant Shropshire and Captain Parker–Loan,[3] *Montgomery County v. Shropshire*, 415 Md. 607, 4 A.3d 512 (2010), to consider the following questions:

1. Does the Maryland Public Information Act, Md.Code Ann., State Gov't § 10–616(i) require the custodian of records to deny the Montgomery County Inspector General access to records of a police department internal investigation of whether the petitioners violated department work rules?

2. Are records of a police department internal investigation of the petitioners protected from disclosure to the Montgomery County Inspector General under Md.Code Ann., State Gov't § 10–615(1) as records made confidential by the Law Enforcement Officers' Bill of Rights [LEOBR], Md.Code Ann., Public Safety § 3–104(n)? [4]

We shall hold that records of an internal investigation pertaining to the alleged violation of administrative rules are "personnel records" pursuant to Section 10–616(i) of the State Government Article [5] and, therefore, may not be disclosed under the

---

**3.** Although Sergeant Shropshire and Captain Parker–Loan filed the Petition for Writ of Certiorari, the County had filed the first appeal in the Court of Special Appeals, and retains the position of "Appellant," because no decision had been issued by the intermediate appellate court. *See* Rule 8–111(a) ("When no prior appellate decision has been rendered, the party first appealing the decision of the trial court shall be designated the appellant and the adverse party shall be designated the appellee.").

**4.** Because of our disposition of the first issue, we need not and will not address the second question presented.

**5.** Section 10–616, governing "required denials," provides, in relevant part:

(a) *In general.*—Unless otherwise provided by law, a custodian shall deny inspection of a public record, as provided in this section.

\* \* \*

(i) *Personnel records.*—(1) Subject to paragraph (2) of this subsection, a custodian shall deny inspection of a personnel record of an

Maryland Public Information Act to the Montgomery County Inspector General.

**Background and Procedural History**

In November 2008, Sergeant Shropshire and Captain Parker–Loan of the Montgomery County Police Department responded to an automobile accident involving Montgomery County Assistant Fire Chief Gregory J. DeHaven. A complaint subsequently was filed questioning the police officers' conduct during the accident investigation, in which it was alleged that both had violated various administrative rules.

At the conclusion of the investigation on May 26, 2009, the Internal Affairs Division (IAD) of the County's police department determined that Sergeant Shropshire and Captain Parker–Loan had committed "no administrative violations":

> The Internal Affairs Division has completed its investigation stemming from the event of November 30, 2008.
>
> The investigation concluded that there were no administrative violations on your part, and after a careful review, I concur with this finding. This investigation will be available for expungement in three years under the provisions of the Expungement Directive, Function Code 309.

Memorandum from Captain David Falcinelli, Director, Internal Affairs Division, to Sergeant Edward Shropshire (May 26, 2009); Memorandum from Captain David Falcinelli, Director, Internal Affairs Division, to Captain Willie Parker–Loan (May 26, 2009).

Even before the close of the internal affairs investigation, on January 9, 2009, the Montgomery County Inspector General initiated an investigation into the handling of the accident "to determine whether [the Department's] methods to investigate

---

individual, including an application, performance rating, or scholastic achievement information.
(2) A custodian shall permit inspection by:
(i) the person in interest; or
(ii) an elected or appointed official who supervises the work of the individual.

Gregory J. DeHaven's vehicle accident on November 30, 2008 and any improper actions on the part of those involved in the accident are consistent with generally accepted investigative standards to ensure legal, fiscal, and ethical accountability in Montgomery County government organizations." The Inspector General submitted a request to the Chief Administrative Officer of the Offices of the County Executive for numerous records, including:

1. Name, rank, duty assignment and duty station of all Police Department employees who responded to the traffic accident involving Assistant Fire Chief Gregory J. DeHaven on November 30, 2008.

2. The duty status of each individual who responded to the accident scene on November 30; if on duty, what time did each individual start and end their work day and what was the pay status (regular time or overtime) for each individual.

3. Copies of all applicable MCG [Montgomery County Government] and Police Department policies, procedures and training instructions with regard to processing the scene of a traffic accident that involves a police vehicle and/or a police officer.

4. Copies of all applicable Police Department policies, procedures and training instructions with regard to conducting and documenting field sobriety tests.

5. Copies of all applicable Police Department policies, procedures and training instructions with regard to issuing traffic citations.

6. Copies of all applicable Police Department policies, procedures and training instructions with regard to completing the State of Maryland Motor Vehicle Accident Report. . . .

Before the records were disclosed, Sergeant Shropshire and Captain Parker–Loan filed a complaint in the Circuit Court seeking a declaration prohibiting the custodian of records from releasing the internal investigation records to the Inspector General. The officers alleged that the records were exempt from disclosure, because they were "personnel records" or, alternatively, were "confidential under State law," as follows:

14. Records of police internal affairs investigations are personnel records under Md.Code Ann., State Gov't § 10–616(i).

15. Personnel records are confidential under Md.Code Ann., State Gov't § 10–616(i).

16. Records of police internal affairs investigations are confidential under State law and thus exempt from disclosure pursuant to Md.Code Ann., State Gov't § 10–615(1).

17. Plaintiffs assert that [the custodian of records] has a clear duty to deny the Inspector General access to IAD File 09–0001 pursuant to Md.Code Ann., State Gov't § 10–615(1).

18. Plaintiffs assert that [the custodian of records] has a clear duty to deny the Inspector General access to IAD File 09–0001 pursuant to Md.Code Ann., State Gov't § 10–616(i).

19. Plaintiffs assert that they have a plain and clear right to have [the custodian of records] deny the Inspector General access to IAD File 09–0001 FI pursuant to Md.Code Ann., State Gov't §§ 10–615(1) and 10–616(i).

20. Defendants maintain that the custodian of records is required to give the Inspector General access to IAD File 09–0001. Defendants also contend that the Inspector General is seeking the records for an investigation that he is conducting and that therefore, Md.Code Ann., State Gov't §§ 10–615(1) and 10–616(i) do not prohibit their disclosure.

21. Plaintiffs will face irreparable harm if their confidential personnel records are disclosed to the Inspector General.

In the second count of the complaint, Sergeant Shropshire and Captain Parker–Loan also sought a writ of mandamus to prohibit the Inspector General from accessing the internal affairs records.[6]

Thereafter, Montgomery County filed a motion for summary judgment, asserting that the internal affairs investigation records were not "personnel records," but rather were "investigatory records," because no evidence of wrongdoing

---

6. The Circuit Court judge entered judgment in favor of Montgomery County with respect to this count.

was found by either officer, such that "no documentation ha[d] been placed in [the officers'] personnel file[s] about the investigation." The County further argued that because the Inspector General is charged with preventing and detecting "fraud, waste and abuse in government activities," disclosure of the records was mandated by County law.

Sergeant Shropshire and Captain Parker–Loan responded and also filed a motion for summary judgment, asserting that the internal affairs records in the present case constitute "personnel records" pursuant to Section 10–616(i) of the State Government Article and are, therefore, protected from disclosure. In the alternative, the officers contended that the records were protected from disclosure by Section 10–615(1) of the State Government Article, prohibiting disclosure of those records that are "confidential" by virtue of State law, because "police internal affairs investigative records are confidential under LEOBR."

After a hearing on the parties' cross-motions for summary judgment, the Circuit Court judge delivered an oral opinion, granting the Inspector General access to the disputed internal affairs investigation records, as follows:

[T]he custodian of records is authorized to release records relating to the investigation by the Internal Affairs Division into the conduct of the [officers] in the underlying matter, provided however, that the custodian may not release information within the file that is of a personal nature, unless such personal information is directly relevant to the underlying investigation.

And by way of illustration, date of hire was mentioned. Well, certainly, date of hire would generally be personal information and not investigatory information. It would generally not fall within the definition of an investigatory record. However, if, for instance, the date of hire, the fact that an officer was a rookie, had just recently begun—and I don't suggest for a moment that was the case here, but I'm just trying to give by way of an illustration—that if date of hire was relevant to the conduct of the investigation; that

is, that it in part explained perhaps why an officer did or did not do something, then it would be subject to disclosure. So if the personal information is relevant, directly relevant to the investigation, it could be disclosed, but not unless directly relevant to the investigation.

With respect to Count 2, where I'm asked to grant a writ of mandamus, mandamusing the custodian to abide by his or her statutory duties, and because there is no evidence before me that would lead me to believe, and no reason to believe, that the custodian will not follow his or her statutory duties, in fact because the Court has every reason to believe that the custodian will follow their statutory duties, the Court will grant the County judgment as to Count 2, all under the request for a writ of mandamus.

Let me finally say that the County has made an alternative argument that even if it's personal information, that it nevertheless would be subject to disclosure, notwithstanding the mandatory provisions of Section 10–616, because it could nevertheless be disclosed in light of the County ordinance which created the Office of Inspector General and empowered the Inspector General to investigate issues concerning waste, management, et cetera, of various departments; and further, that the ordinance directed the custodian of records to provide, upon request, the information to the Inspector General in the conduct of those duties. The Court finds, in light of the controversy as it was described by the parties, that it is unnecessary for the Court to reach that issue in this case, and particularly in light of the fact that there's no cross-claim for declaratory judgment, or any other kind of relief, I decline to decide that issue.

The Circuit Court entered an order granting the County's motion for summary judgment and stating that the Inspector General was permitted to access the internal affairs records, with the exception of "information of a personal nature" unless "directly relevant to the underlying investigation":

**ORDERED, ADJUDGED AND DECREED,** as to Count I, that pursuant to State Government Article § 10–618(f) the

Custodian of Records is authorized to release records relating to the investigation by the Internal Affairs Division into the conduct of the [officers] in the underlying matter, provided, however, that the custodian may not release information within the file that is of a personal nature, unless such personal information is directly relevant to the underlying investigation[.] [7]

The County appealed to the Court of Special Appeals, asserting that the records, in their entirety, should be disclosed to the Inspector General, and the officers also appealed, arguing that the internal affairs investigation records were prohibited from disclosure as "personnel records," or alternatively, as "confidential" by law pursuant to the Law Enforcement Officers' Bill of Rights. This Court issued a writ of certiorari at this juncture, before the intermediate appellate court acted.

## Montgomery County Inspector General

The Office of the Montgomery County Inspector General is a relatively new institution, created in 1997,[8] identified in Section 2–151(a) of the Montgomery County Code as having three objectives, namely to:

1. review the effectiveness and efficiency of programs and operations of County government and independent County agencies;

---

**7.** In a declaratory judgment action, "the court must enter a declaratory judgment, defining the rights and obligations of the parties or the status of the thing in controversy, and that judgment must be in writing and in a separate document." *Lovell Land v. State Highway Admin.*, 408 Md. 242, 256, 969 A.2d 284, 292 (2009), quoting *Allstate v. State Farm*, 363 Md. 106, 117 n. 1, 767 A.2d 831, 837 n. 1 (2001). Although the Circuit Court failed to enter a proper declaratory judgment in the present case, this oversight is not a jurisdictional defect. We will "review the merits of the controversy and remand for entry of an appropriate declaratory judgment by the circuit court." *Bowen v. City of Annapolis*, 402 Md. 587, 609, 937 A.2d 242, 255 (2007), quoting *Bushey v. Northern Assurance*, 362 Md. 626, 651, 766 A.2d 598, 611 (2001).

**8.** Montgomery County, MD—OIG Home Page, http://www.montgomery county md.gov/oigtmpl.asp?url=/content/InspectorG/index.asp (last visited June 27, 2011).

2. prevent and detect fraud, waste, and abuse in government activities; and

3. propose ways to increase the legal, fiscal, and ethical accountability of County government departments and County-funded agencies.

The Inspector General is appointed by the County Council for a four year term and has powers granted by ordinance, including the power to "conduct investigations" and "develop recommendations," as follows:

(h) *Powers and Duties.* The Inspector General must attempt to identify actions which would enhance the productivity, effectiveness, or efficiency of programs and operations of County government and independent County agencies. In developing recommendations, the Inspector General may:

1. conduct investigations, budgetary analysis, and financial, management, or performance audits, and similar reviews; and

2. seek assistance from any other government agency or private party, or undertake any project jointly with any other governmental agency or private body.

In each project of the Office, the Inspector General should uphold the objective of complying with applicable generally accepted government auditing standards.

Montgomery County Code, Section 2–151(h). Moreover, Section 2–151(*l*) provides that each "department or office in County government" is required to provide any information concerning its operations to the County Inspector General, although the Inspector General "must comply with any restrictions on public disclosure of the document or information that are required by federal or state law":

1. The Inspector General is legally entitled to, and each department or office in County government and each independent County agency must promptly give the Inspector General, any document or other information concerning its operations, budget, or programs that the Inspector General requests. The Inspector General must comply with any

restrictions on public disclosure of the documents or information that are required by federal or state law. The Inspector General must immediately notify the Chief Administrative Officer, the County Attorney, and the President of the Council if any department, office, or agency does not provide any document or information within a reasonable time after the Inspector General requests it. The Chief Administrative Officer (for departments and offices in the Executive branch of County government), the County Attorney (for independent County agencies), and the Council President (for offices in the legislative branch of County government) must then take appropriate action (including legal action if necessary) to require the department, office, or agency to provide the requested document or information.

2. If the Inspector General does not receive all necessary information under paragraph (1), the Inspector General may issue a subpoena to require any person to appear under oath as a witness or produce any record or other material in connection with an audit or investigation under this Section. The Inspector General may enforce any subpoena issued under this Section in any court with jurisdiction....

## Internal Police Investigations

Internal investigations of law enforcement officers are governed by Sections 3–101 *et seq.* of the Public Safety Article, Maryland Code (2003), known as the Law Enforcement Officers' Bill of Rights (LEOBR).[9] Specifically, Section 3–104 of the Public Safety Article is controlling whenever a law enforcement officer is under investigation or subjected to interrogation by a law enforcement agency "for a reason that may lead to disciplinary action, demotion, or dismissal":

(a) *In general.*—The investigation or interrogation by a law enforcement agency of a law enforcement officer for a

---

9. All references to Sections 3–101 *et seq.* of the Public Safety Article are to Maryland Code (2003), unless otherwise noted.

reason that may lead to disciplinary action, demotion, or dismissal shall be conducted in accordance with this section. Montgomery County Police Department Function Code 301, "Disciplinary Process for LEOBR—Covered Sworn Officers," provides guidelines for the disciplinary process.[10]

An internal investigation is initiated by a "complaint" or "allegation of misconduct made against an employee of the department." The Director of the Internal Affairs Division reviews the complaint and determines whether it merits further investigation. If it does, the Director then assigns the complaint to an investigator, typically a commanding officer, tasked with gathering "all available documentary evidence" and compiling an "Internal Investigative Report," which contains the allegations, a written report of any information uncovered by the investigation, and a list of all those contacted or interviewed.[11] At the close of an investigation, a complaint may be "sustained," [12] in which case the officer may be subject to disciplinary action, demotion or dismissal and may appeal to the Internal Investigative Review Panel. After three years, an officer may request that the record of a complaint against

10. Function Code 301 states the policy governing disciplinary proceedings as follows:

Discipline must be fair and equitable. A disciplinary action against an employee must be initiated promptly when it is evident that the action is necessary to maintain an orderly and productive work environment. Except in cases of theft or serious violations of policy or procedure that create a health or safety risk, disciplinary actions must be progressive in severity. The severity of the action should be determined after consideration of the nature and gravity of the offense, its relationship to the employee's assigned duties and responsibilities, the employee's work record, and other relevant factors.

11. Section 5, subsection L of Function Code 301 provides that Internal Investigative Reports are confidential:

Reports of internal investigations, including witness statements, are confidential. Authorization for access to these reports can only be granted by the Chief of Police, *or designee.*

12. The Internal Affairs Division investigation in the present case concluded that there were "no administrative violations" by Sergeant Shropshire or Captain Parker–Loan; as a result, we do not address whether records of "sustained" complaints may be disclosed to a County's Inspector General.

him be expunged if the officer was exonerated or the Department determined that "the charges were unsustained or unfounded." Section 3–110(1) of the Public Safety Article.

**Maryland Public Information Act Request**

The Maryland Public Information Act, enacted by Chapter 698 of the Maryland Laws of 1970, embodies the policy, as a general rule, that "[a]ll persons are entitled to have access to information about the affairs of government and the official acts of public officials and employees." Section 10–612(a); *see A.S. Abell Publishing Co. v. Mezzanote*, 297 Md. 26, 32, 464 A.2d 1068, 1071 (1983). Significant mandatory exemptions exist, nevertheless, in Section 10–615 and Section 10–616, among others,[13] of the State Government Article. Section 10–615 provides that those records that are "privileged or confidential" by law are exempt from disclosure,[14] as follows:

A custodian shall deny inspection of a public record or any part of a public record if:

(1) by law, the public record is privileged or confidential; or

(2) the inspection would be contrary to:

(i) a State statute;

(ii) a federal statute or regulation that is issued under the statute and has the force of law;

(iii) the rules adopted by the Court of Appeals; or

(iv) an order of a court of record.

*See Police Patrol Security Systems, Inc. v. Prince George's County*, 378 Md. 702, 710–13, 838 A.2d 1191, 1196–97 (2003);

---

13. Section 10–617 of the State Government Article, governing exemptions from disclosure for "specific information," is not implicated in the present case.

14. Sergeant Shropshire and Captain Parker–Loan refer to Section 10–615(1) of the State Government Article, asserting that the records concerning alleged administrative rule violations are "confidential" by virtue of State law, namely the Law Enforcement Officers' Bill of Rights, Section 3–104(n) of the Public Safety Article. Because we shall hold that the internal affairs records constitute "personnel records" pursuant to Section 10–616(i) of the State Government Article, we do not reach this argument.

*Caffrey v. Department of Liquor Control,* 370 Md. 272, 303–04, 805 A.2d 268, 286–87 (2002); *Blythe v. State,* 161 Md.App. 492, 516–517, 870 A.2d 1246, 1259–60 (2005).

Similarly, Section 10–616 of the State Government Article governs "required denials" of "specific records," including "personnel records," as follows:

(a) *In general.*—Unless otherwise provided by law, a custodian shall deny inspection of a public record, as provided in this section.

*　　*　　*

(i) *Personnel records.*—(1) Subject to paragraph (2) of this subsection, a custodian shall deny inspection of a personnel record of an individual, including an application, performance rating, or scholastic achievement information.

(2) A custodian shall permit inspection by:

(i) the person in interest; or

(ii) an elected or appointed official who supervises the work of the individual.

*See University System v. Baltimore Sun,* 381 Md. 79, 85–99, 847 A.2d 427, 432–440 (2004); *Baltimore Police v. State,* 158 Md.App. 274, 282, 857 A.2d 148, 153 (2004). No definition of "personnel records" exists in the statute. *Kirwan v. The Diamondback,* 352 Md. 74, 82, 721 A.2d 196, 200 (1998).

Section 10–618 of the State Government Article, in contrast, gives the custodian of records discretion to deny disclosure of requested information, most significantly, for the present case, being records of "investigations":

(f) *Investigations.*—(1) Subject to paragraph (2) of this subsection, a custodian may deny inspection of:

(i) records of investigations conducted by the Attorney General, a State's Attorney, a city or county attorney, a police department, or a sheriff;

(ii) an investigatory file compiled for any other law enforcement, judicial, correctional or prosecution purpose; or

(iii) records that contain intelligence information or security procedures of the Attorney General, a State's Attorney, a city or county attorney, a police department, a State or local correctional facility, or a sheriff.

(2) A custodian may deny inspection by a person in interest only to the extent that the inspection would:

(i) interfere with a valid and proper law enforcement proceeding;

(ii) deprive another person of a right to a fair trial or an impartial adjudication;

(iii) constitute an unwarranted invasion of personal privacy;

(iv) disclose the identity of a confidential source;

(v) disclose an investigative technique or procedure;

(vi) prejudice an investigation; or

(vii) endanger the life or physical safety of an individual.

The essential difference between the mandatory and discretionary provisions was succinctly stated by Judge John C. Eldridge, writing for this Court in *Attorney General v. Gallagher*, 359 Md. 341, 353–54, 753 A.2d 1036, 1043 (2000):

Sections 10–615 [and 10–616] are both mandatory provisions, meaning that when they are applicable to a particular record, the custodian *must* deny inspection of that record. This is made clear by the use of the word "shall" in both provisions, which specifically state that "a custodian shall deny inspection" when one of the enumerated exemptions under those sections applies. Section 10–618, however, is a discretionary provision, stating that "if a custodian believes that inspection of a part of a public record by the applicant would be contrary to the public interest, the custodian *may* deny inspection by the applicant of that part".

The "Rubik's Cube" [15] of the present case involves whether the records of the internal affairs investigation in issue are

___

15. A "Rubik's Cube" is a "puzzle consisting of a plastic cube with colored squares that you turn to make each side of the cube a different

deemed "personnel records" and not disclosable or are records of "investigations" and the subject of discretionary disclosure.

**Discussion**

■ The County argues that the internal affairs records constitute "investigative" records subject to discretionary disclosure pursuant to Section 10–618(f), because the investigation "yielded no evidence that the officers were involved in any wrongdoing, so no disciplinary action ensued." Sergeant Shropshire and Captain Parker–Loan counter that the internal affairs records are "personnel records" pursuant to Section 10–616(i), no matter what, because an investigation of alleged administrative rule violations "necessarily entails the employer's narrowly focused assessment of the employee's performance and ability to do a job."

There is no statutory definition of "personnel records" in the Maryland Public Information Act. *Kirwan v. The Diamondback*, 352 Md. 74, 721 A.2d 196 (1998), was our first foray to consider the contours of the phrase "personnel records" pursuant to Section 10–616(i) of the State Government Article. We recognized that the language of subsection (i) "discloses what type of documents the Legislature considered to be personnel records," and determined that personnel records were those relating to hiring, discipline, promotion, dismissal, or any matter involving an employee's status. In that case, a collegiate newspaper had requested documents from the University of Maryland relating to campus parking violations committed by members of the men's basketball team, as well as the team's head coach. We concluded that the University had erroneously denied the requests on the basis of the "personnel records" exception, asserting that parking tickets received by the coach were nondisclosable "personnel records." In so doing, we reasoned that tickets issued by campus police did not relate to the coach's hiring, discipline, promotion, dismissal, or any matter involving his status as an

---

color." Oxford Advanced Learner's Dictionary, http://www.oxfordadvancedlearnersdictionary.com/dictionary/Rubik%27s+Cube+%7C31%7C (last visited June 27, 2011).

employee, and, therefore, did not fit within the commonly understood meaning of the term "personnel records." *Id.* at 83, 721 A.2d at 200.

Subsequently, in *Governor v. Washington Post,* 360 Md. 520, 759 A.2d 249 (2000), we reinforced the tenets of *Kirwan* when we emphasized that scheduling and telephone records were not "personnel records," because they did not relate to an employee's "hiring, discipline, promotion, dismissal, or any matter involving his status as an employee." *Id.* at 547, 759 A.2d at 264. In that case, the Washington Post had requested telephone and scheduling records from the Office of the Governor. We determined that the records did not fall within the purview of "personnel records," because, for instance, the record of telephone numbers called by the Governor or members of his staff about possible future appointments did not relate to an employee's hiring, discipline, or status:

> The identification of the telephone number which the Governor or a member of his staff called, or the identification of someone with whom the Governor met, concerning a possible future appointment to a judgeship or position in the executive branch of state government, would not amount to a "personnel record" as defined in *Kirwan.* The simple record of what number was called, or with whom the Governor met, about possible *future* employment would not relate to the discipline, promotion, dismissal, status, job performance, or achievement of an existing or former employee. Again, while the substance of the conversations might in some cases fall in the category of "application for employment" or relate to "hiring," the fact that the Governor or a staff member telephoned or met with an identified individual would not be a "personnel record" under any "commonly understood meaning of the term."

*Id.* at 548, 759 A.2d at 264, quoting *Kirwan,* 352 Md. at 83, 721 A.2d at 200.[16]

---

16. Subsequently, in *Baltimore Police v. State,* 158 Md.App. 274, 857 A.2d 148 (2004), the intermediate appellate court considered whether certain portions of a law enforcement officer's personnel file could be

In *Baltimore v. Maryland Committee*, 329 Md. 78, 617 A.2d 1040 (1993), we considered, in the context of discretionary denial by the custodian of records, whether the police department had appropriately denied access to records of an internal investigation into complaints regarding the conduct of two police officers during the service of a subpoena duces tecum. Although we were not presented with the issue of whether the internal affairs records constituted "personnel records," we, nevertheless, reasoned that the records of the investigation, which determined that the allegations against the officers were "not sustained," were permissibly precluded from disclosure by the custodian, in the interests of fairness to the investigated officers as well as the integrity of the investigatory process:

> [W]here, as here, the investigation concludes with a determination that the allegations are not sustained, fairness to the investigated officers and the avoidance of needless publicity to the cooperating witnesses, with possible inhibiting effects on future investigations, justify on public interest grounds the custodian's denial of inspection to one other than a person in interest.

*Id.* at 95, 617 A.2d at 1048. In so doing, we noted that "[m]istaken or even deliberately false reports and accusations are made against members of the department," and that, "[i]n some instances, the most conscientious and hardworking members will be the subject of such reports." *Id.* at 84, 617 A.2d at 1043. We further emphasized the significant public interest

---

disclosed to a defendant in a criminal case. The defendant sought records of an Internal Affairs Division investigation concerning an accusation that a detective, who had participated in the defendant's arrest and was scheduled to testify at his trial on drug charges, had been dishonest in an unrelated matter, to cross-examine the officer at trial. The Court of Special Appeals, guided by *Kirwan*, agreed that the records indeed constituted "personnel records," but determined that the trial judge could compel disclosure after having balanced the criminal defendant's need for relevant information in the records against the privacy rights of other persons and the custodian's duty to maintain confidentiality. *Id.* at 290, 857 A.2d 148, 857 A.2d at 158, citing *Blades v. Woods*, 107 Md.App. 178, 185, 667 A.2d 917, 921 (1995).

in preserving the confidentiality of internal police investigations both in promoting cooperation by civilian witnesses and police officers.

In the present case, the Internal Affairs Division inquiry explored whether Sergeant Shropshire and Captain Parker–Loan had committed administrative rule violations in connection with the accident investigation involving Assistant Fire Chief Gregory J. DeHaven. Specifically, the internal affairs investigation examined "[a]llegations of administrative misconduct ... that, if true, would or could result in disciplinary action." As we emphasized in *Kirwan* and its progeny, because the internal affairs records involving Sergeant Shropshire and Captain Parker–Loan related to employee discipline, the records are indeed "personnel records" exempt from disclosure pursuant to Section 10–616(i) of the State Government Article.

■ Moreover, as we recognized in *Maryland Committee*, where, as here, an investigation clears the officers of wrongdoing, there is a significant public interest in maintaining confidentiality, both in fairness to the investigated officers and cooperating witnesses. This policy is embodied in Section 3–104(n) of the Public Safety Article, which states that an investigated officer must "execute a confidentiality agreement" before obtaining a copy of his or her investigatory file at the close of an investigation. As evidenced by the deposition testimony of Internal Affairs Division Chief, Captain David Falcinelli, attached to Sergeant Shropshire and Captain Parker–Loan's motion for summary judgment, "even the best officers could be subject to false or baseless complaints," so that an officer's professional life and reputation are challenged. Finally, records of internal investigations contain significant personal information, such as the investigated officer's name, date of birth, address, social security number, level of education, as well as the complaint, transcripts of witness interviews, and the investigator's notes, that if disclosed, could be potentially detrimental to not only the officers, but also the witnesses.

The County asserts that the internal affairs records are, nevertheless, disclosable, referring us to *Maryland State Police v. NAACP Branches*, 190 Md.App. 359, 988 A.2d 1075 (2010), *cert. granted Maryland State Police v. NAACP Branches*, 415 Md. 38, 997 A.2d 789 (2010), which also was relied upon by the Circuit Court in the present case, in which the Court of Special Appeals considered whether documents relating to allegations of illegal racial profiling were "personnel records" pursuant to the Maryland Public Information Act. In that case, the NAACP and the Maryland State Police ("MSP") had entered into a consent decree in federal court in 2003, in order to settle litigation between the parties that obligated the MSP to prevent any incidents of racial profiling by its officers. In 2007, the NAACP became suspicious that the MSP was not fulfilling its obligations under the consent decree and filed a request with MSP for "documents obtained or created in connection with any complaint of racial profiling," pursuant to the Maryland Public Information Act. The MSP denied the request on the ground that the documents were "personnel records of an individual" pursuant to Section 10–616(i) of the State Government Article.

The Court of Special Appeals in *NAACP Branches* determined that the documents were disclosable, because they were not "personnel records;" the records were not indexed by the name of the employee or by the employee's identification number, but rather were stored in a central location, suggesting that the records were significant in the aggregate, as providing statistical information, rather than pertaining to the hiring, discipline, promotion, dismissal, or any other employee matter relative to particular employees. *Id.* at 369, 988 A.2d at 1080–81.

The present case is distinguishable, because the internal affairs records specifically reference the acts taken by Sergeant Shropshire and Captain Parker–Loan during the investigation of a discrete motor vehicle accident and the unsustained allegations against them, rather than statistics compiled regarding the acts of a group of officers without identification

of their personal information. Records of alleged systemic racial profiling by a police department as a whole clearly are differentiated from records investigating alleged administrative rule violations by identified police officers in connection with a specific incident.

Finally, the County's reference to *Blades v. Woods,* 107 Md.App. 178, 667 A.2d 917 (1995), in which a police officer, who was disciplined for "sexual misconduct," filed a Section 1983 claim alleging that he was a victim of race discrimination and requesting answers to interrogatories relating to all departmental investigations involving sexual misconduct, is misplaced because the Maryland Public Information Act was not implicated in that case.[17] *See Superintendent v. Henschen,* 279 Md. 468, 473–74, 369 A.2d 558, 561 (1977) (reasoning that "whether or not due process considerations might make [ ] records available to ... a party in [a civil or] administrative proceeding ... does not determine whether they are available under the Public Information Act").

In sum, the internal affairs records involving alleged administrative rule violations by Sergeant Shropshire and Captain Parker–Loan are "personnel records" pursuant to Section 10–616(i) of the State Government Article, and are, therefore, mandatorily exempt from disclosure by the custodian of records. We shall direct that the case be remanded to the Circuit Court for entry of an appropriate declaratory judgment to that effect, in conformance with this Opinion.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY VACATED; CASE REMANDED TO THAT COURT FOR ENTRY OF A DECLARATORY**

17. The County also states that even if the internal affairs investigation records are "personnel records," the Inspector General requires access to those records to investigate the efficacy of the standards and methods employed by the Department. The County's assertion of a special need is without merit, because the Inspector General can obtain information about Sergeant Shropshire's and Captain Parker–Loan's handling of the traffic accident by culling primary sources.

JUDGMENT IN CONFORMANCE WITH THIS OPINION; COSTS TO BE PAID BY MONTGOMERY COUNTY.

ADKINS and BARBERA, JJ., dissent.

ADKINS, J., dissenting.

*Government ought to be all outside and no inside.... Everybody knows that corruption thrives in secret places, and avoids public places, and we believe it a fair presumption that secrecy means impropriety.*

—Woodrow Wilson

In crafting the Maryland Public Information Act ("MPIA"), the General Assembly sought to promote the disclosure of public records. *See Kirwan v. Diamondback*, 352 Md. 74, 84, 721 A.2d 196, 200 (1998) ("[T]he policy of the Public Information Act is to allow access to public records."). This objective is memorialized in the statute itself, MPIA § 10–612(a) ("All persons are entitled to have access to information about the affairs of government and the official acts of public officials and employees."), and reiterated in its legislative history, House Constitutional and Administrative Law Committee 1976 REPORT TO THE GENERAL ASSEMBLY OF MARYLAND at 111 ("By amending the law in this manner, it makes clear that in construing even the withholding section the law should be viewed in a manner which would permit disclosure."). Accordingly, we have repeatedly held that "the statute should be interpreted to favor disclosure." *Kirwan*, 352 Md. at 84, 721 A.2d at 200. Here, however, the majority glosses over this policy in order to rush to a conclusion that would undermine it.

This case presents us with a tug of war, between the police and the public, over the boundaries of "investigative" and "personnel" records. The playing field is not level, however, as the burden to show that an exemption exists rests squarely on the shoulders of the party seeking to prevent disclosure, in this case, the police officers. *Cf. Cranford v. Montgomery County*, 300 Md. 759, 780, 481 A.2d 221, 231–32 (1984) (holding that the presentation of evidence at trial to support the denial

of petitioner's MPIA request was "simply too general and conclusory, standing alone, to meet the [custodian's] burden of proof"); *Fioretti v. Maryland State Bd. of Dental Exam'rs*, 351 Md. 66, 87, 716 A.2d 258, 268–69 (1998) (custodian was "required to show that the documents it [sought] to withhold [were] investigatory files compiled for law enforcement purposes, [and] that disclosure of the records would have prejudiced its investigation").

The MPIA sheds some light onto the types of documents that are "personnel records." Although the MPIA does not explictly define the term, its language "discloses what type of documents the Legislature considered to be personnel records," *Kirwan*, 352 Md. at 82, 721 A.2d at 200, by listing three categories of documents: (1) an application for employment; (2) performance rating; and (3) scholastic achievement. Keeping in mind the doctrine of ejusdem generis, *see generally In re Wallace W.*, 333 Md. 186, 190, 634 A.2d 53, 55–56 (1993),[1] this list suggests that the term "personnel records" be interpreted to include "only those [records] of the same class or general nature as those specifically antecedently mentioned." *Rucker v. Harford County*, 316 Md. 275, 295, 558 A.2d 399, 408–09 (1989).

I first observe that the type of records developed during an investigation, like the records at issue in this case, are a far cry from the three examples enumerated in the statute. This is so even if, as the majority asserts, that investigation concerns a discrete event and involves only a few, identifiable

---

1. As this case describes, a general statutory term followed by a list of particulars is to be interpreted narrowly to "include only those things or persons of the same class or general nature as those specifically mentioned." *In re Wallace W.*, 333 Md. 186, 190, 634 A.2d 53, 55–56 (1993). The rule applies when:

    (1) the statute contains an enumeration by specific words; (2) the members of the enumeration suggest a class; (3) the class is not exhausted by the enumeration; (4) a general reference supplementing the enumeration, usually following it; and (5) there is not clearly manifested an intent that the general term be given a broader meaning than the doctrine requires.

    *Id.*

employees. Indeed, the *Kirwan* Court reasoned that, in light of the MPIA's policy favoring disclosure, it did "not believe that the General Assembly intended that *any* record identifying an employee would be exempt from disclosure as a personnel record. Instead, the General Assembly likely intended that the term 'personnel records' retain its common sense meaning." *Kirwan,* 352 Md. at 84, 721 A.2d at 200.

Here, the Inspector General was attempting to determine whether both the accident and internal affairs investigations were consistent with generally accepted investigative standards. Thus the purpose of the request went to investigation technique and not to evaluating the performance of the individual officers. We should not, as I submit the majority does, extend the term "personnel records" to include all records relating to an officer's actions in the course of his duty. Not only would this holding impair the Inspector General in performing its oversight role, but would also shield the police, who are public officers, from public scrutiny, an outcome completely at odds with the spirit of the MPIA.

This is not the first time Maryland courts have distinguished "investigation records" and "personnel records" with regard to investigations of potential police misconduct. In *Maryland Dep't of State Police v. Maryland State Conference of NAACP Branches,* 190 Md.App. 359, 988 A.2d 1075 (2010), the Court of Special Appeals held that internal affairs files relating to investigations into complaints of illegal racial profiling were investigative records and not personnel records. The Court began by emphasizing the "broad remedial purpose" of the MPIA, which is to ensure "that citizens of the State of Maryland be accorded wide-ranging access to public information concerning the operation of their government." *Id.* at 367, 988 A.2d at 1079 (quoting *A.S. Abell Publg. Co. v. Mezzanote,* 297 Md. 26, 32, 464 A.2d 1068, 1071 (1983)). The Court then applied this reasoning to the records of racial profiling complaints, concluding that the public has an interest in protecting against racial profiling by its government:

Racial profiling complaints against Maryland State Troopers do not involve private matters concerning intimate details of

the trooper's private life.  **Instead, such complaints involve events occurring while the trooper is on duty and engaged in public service.  As such, the files at issue concern public actions by agents of the State concerning affairs of government, which are exactly the types of material the Act was designed to allow the public to see.**  A State Trooper does not have a reasonable expectation of privacy as to such records.

*NAACP Branches,* 190 Md.App. at 368, 988 A.2d at 1080 (emphasis added) (citations omitted).

Here, the officers were on duty and engaged in public service when they investigated the automobile accident.  The internal affairs staff were also on duty and engaged in public service when they investigated whether the officers' investigation violated any administrative rules.  Undeniably, the public has an interest in protecting against abuse, bias, and conspiracy by the very people it has hired for protection.  Therefore, like the records in *NAACP Branches,* "the files at issue concern public actions by agents of the State concerning affairs of government, which are exactly the types of material the Act was designed to allow the public to see."  190 Md.App. at 368, 988 A.2d at 1080.

In *NAACP Branches* the Court also reasoned that, because the records so clearly fell within the "records of investigations" exemption under the MPIA, the General Assembly could not have intended that those same records would also be subject to the more general "personnel records" exemption:

It is illogical to believe that the General Assembly, when it adopted a permissible degree exception for "records of investigations conducted by . . . a police department," and set forth detailed provisions governing when such records could be withheld (*see* section 10–618(f)) also intended that a custodian of records must withhold investigatory files of a police department under the much more general "personnel record[s] of an individual" exception as set forth in section 10–616(i).  Because the records the NAACP seeks in this case fit precisely within the class of records governed by

section 10–618(f), we see no reason why its provision should not control, rather than section 10–616(i) of the Act[,] upon [ ] which the MSP relies. In other words, the specific statutory provision takes precedence over the more general one.

190 Md.App. at 370–71, 988 A.2d at 1081. This logic holds true for the records here. The requested documents concern an internal affairs investigation, meaning that they are, quite plainly, "records of investigations conducted by … a police department." Accordingly, they fall under the permissible denial section of the MPIA.

The Majority attempts to distinguish this case on the grounds that the racial profiling records at issue in *NAACP Branches* did not contain personal information on the individual officer and were stored in a central location:

> [T]he records [in *NAACP Branches* ] were not indexed by the name of the employee or by the employee's identification number, but rather were stored in a central location, suggesting that the records were significant in the aggregate[. Here,] the internal affairs records specifically reference the acts taken by [the two officers] during the investigation of a discrete motor vehicle accident and the unsustained allegations against them, rather than statistics compiled regarding the acts of a group of officers without identification of their personal information.

Maj. Op. at 382, 23 A.3d at 217. It is true that, in *NAACP Branches*, the records "were not indexed by the name of the employee or by the employee's identification number[,]" but instead were "kept in one filing cabinet located in the MSP's Internal Affairs Office." 190 Md.App. at 369, 988 A.2d at 1080. Yet, as the County argues, that also seems to be the case here:

> All internal affairs files are maintained at the Internal Affairs Division of the Police Department. When an internal affairs investigation does not result in disciplinary action, no documentation about the investigation is placed in the investigated officer's personnel file. Only when the investigation results in a "sustained" ruling and the punish-

ment implemented is more than an oral admonishment does a copy of the statement of charges of the internal affairs investigation become part of the investigated officer's personnel file.

More importantly, as the majority concedes, the internal affairs records pertain to "the *investigation* of a discrete motor vehicle accident[.]" (Emphasis added). The fact that only a few officers were involved in the underlying investigation, making them easily identifiable, does not transform the *investigation* records into personnel records. Indeed, in our electronic age, a simple word search can yield all documents pertaining to a particular officer. Under the majority's logic, this keystroke would transform those records into personnel records, regardless of whether a more appropriate label exists. The *Kirwan* Court recognized this as an absurd result, and it concluded that the General Assembly did not intend that "*any* record identifying an employee would be exempt from disclosure as a personnel record." *Kirwan*, 352 Md. at 84, 721 A.2d at 200. For these reasons, I conclude that the records here are not personnel records.

Ironically, my belief that internal review records are records of investigation is shared by the officers' comrades in arms. In *Mayor and City Council of Baltimore v. Md. Committee Against the Gun Ban*, 329 Md. 78, 617 A.2d 1040 (1993), it was the police department that characterized such records as falling under the "investigation" exemption of the PIA. Just like the documents here, the records at issue in that case were generated in the course of an investigation conducted by the Internal Investigation Division (IID) of the police department in Baltimore City. That investigation was initiated by civilian complaints about the conduct of police officers during the service of a subpoena duces tecum on the Maryland Committee Against the Gun Ban ("Committee"). When the Committee sought disclosure of those records, the director of the IID rejected the request by relying on the records of "investigations" exemption of the MPIA. 329 Md. at 86, 617 A.2d at 1044. The records in the present case are of the exact same type as those in *Gun Ban;* they are the product of an

internal review investigation into the techniques employed by its officers during the execution of a public service.

Because the records in this case are "investigation records," thereby falling under the permissible denial section of the MPIA, Montgomery County law demands that the custodian release them to the Inspector General. As we have previously explained, "the 'permissible denial' provisions of the MPIA authorize custodians to exercise discretion in granting or denying requests for certain information. Therefore, home rule counties may direct or guide the exercise of this discretion, or even eliminate it entirely, by local enactment." *Police Patrol Security Systems v. Prince George's County,* 378 Md. 702, 712, 838 A.2d 1191, 1197 (2003). *See also Caffrey v. Dept. of Liquor Control,* 370 Md. 272, 305, 805 A.2d 268, 287 (2002) ("The permissible denials of the MPIA are also subject to waiver by the County."). Here, the County has expressly directed that every County department is to provide the Inspector General with certain records upon request: "The Inspector General is legally entitled to, and each department or office in County government and each independent County agency must promptly give the Inspector General, any document or other information concerning its operations, budget, or programs that the Inspector General requests." Montgomery Code § 2–151(*l*)(1). Accordingly, the IAD records in this case must be released to the Inspector General.[2]

---

**2.** The officers also allege that disclosure would be improper because the IAD records are made "confidential by law" pursuant to the Law Officer's Bill of Rights ("LEOBR"). This Court has employed a balancing test when dealing with the confidentiality interest of a police officer under the LEOBR. In *Robinson v. State,* 354 Md. 287, 730 A.2d 181 (1999), a robbery conviction was reversed because petitioner was not allowed access to prior statements by police officer witnesses made to the Internal Affairs Division (IAD) of the Prince George's County Police Department. The IAD was investigating the discharge of the officer's weapon during the defendant's arrest. The LEOBR "limits access to the internal investigation file to the affected officer, and then only to exculpatory information, and does not expressly provide for access by anyone else." 354 Md. at 308, 730 A.2d at 192. Nevertheless, this Court held that the trial court's denial of the defendant's request to examine those records was in error, as it violated the defendant's right under the "Jencks" rule, *see generally Jones v. State,* 310 Md. 569, 582–

For the aforementioned reasons, I respectfully dissent. Judge Barbera authorizes me to state that she joins in the views expressed in this dissent.

83, 530 A.2d 743 (1987), *vacated*, 486 U.S. 1050, 108 S.Ct. 2815, 100 L.Ed.2d 916, *aff'd in part and vacated on other grounds*, 314 Md. 111, 549 A.2d 17 (1988), to examine all written reports or statements previously made by a witness to determine whether they contained any inconsistency with the testimony given at trial. In reaching this conclusion, the Court balanced the confidentiality interest "against the confrontation and due process rights of the defendant[,]" reasoning that "[w]hile confidentiality does go to discoverability, it does not guarantee insulation of the confidential matter from disclosure." 354 Md. at 309, 730 A.2d at 193.

Here, the police officers' confidentiality interest must be balanced against the public interest in transparency. The Inspector General was created specifically to "prevent and detect fraud, waste, and abuse in government activities[.]" Montgomery County Code § 2–151(a)(2). Indeed, the public has a vital interest in preventing abuse in government activities. On the other side of the scale, the possibility that the IAD file will be released to the public at large is minor, because under the County Code, the "Inspector General must comply with any restrictions on public disclosure of the document or information that are required by federal or state law." Montgomery County Code § 2–151(*l*)(1). Thus, the confidentiality interest extends only to preventing the Inspector General from viewing the file. Here, the Inspector General is acting as the government's auditor of the IAD, much like the IAD was the government's auditor of the underlying police investigation. I do not see how the officers view their confidentiality interest as being further hindered by the same type of investigation.